# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

Rodney J. Ireland, et al.,       )
                                            )
                     Plaintiffs,       )
                                            )       Case No.  3:13-cv-3
               vs.                      )
                                            )     **REPORT AND RECOMMENDATION**
Maggie D. Anderson, Executive Director,     )
North Dakota Department of Human     )
Services, et al.,                              )
                                            )
                     Defendants.      )

        This action was initiated *in forma pauperis* and *pro se* by three of the currently named plaintiffs.[1] After reviewing the complaint, motions and documents submitted by the three initial plaintiffs, the court found their claims may have merit and, due to the complexity of the claims, appointed counsel to represent them. (Order Appointing Counsel, Doc. #27). The court denied plaintiffs' then pending motions without prejudice and directed counsel to file an amended complaint. (Order Denying Motions, Doc. #28). Counsel filed an amended complaint for injunctive and declaratory relief which named additional plaintiffs, an additional defendant, and did not seek relief against some of the defendants that were initially named by the plaintiffs in the *pro se* complaint. (Amended Complaint, Doc. #40).

        Shortly after filing the amended complaint, plaintiffs filed a motion for permission to serve subpoenas for production of documents on third parties. (Motion to Serve Subpoenas, Doc. #42). Plaintiffs stated they needed additional information to fully plead their case through a

---

[1] All of the named plaintiffs are civilly committed as sexually dangerous individuals or are in the process of commitment proceedings. (See Motion to Amend, Doc. #82, pp. 5-6). All but two of the plaintiffs appear to be confined at the North Dakota State Hospital. Id.

second amended complaint. Id. The court granted plaintiffs' motion and allowed plaintiffs to serve subpoenas for production as detailed in the court's order. (See Order, Doc. #43). Prior to plaintiffs seeking leave to file a second amended complaint, defendants filed a motion to dismiss the first amended complaint based on lack of subject matter jurisdiction and the doctrine of abstention. (Motion to Dismiss, Doc. #51). Plaintiffs then filed their motion for leave to file a second amended complaint.[2] (Motion to Amend, Doc. #82). Defendants oppose the motion, contending the amendment is futile because the court lacks jurisdiction over the second amended complaint, the court should abstain from exercising jurisdiction pursuant to Younger v. Harris, 401 U.S. 37 (1971), and that plaintiffs fail to state a claim under Title II of the Americans with Disabilities Act upon which relief can be granted. (Response to Motion to Amend, Doc. #83). Additionally, defendants request that the court grant their motion to dismiss the first amended complaint because plaintiffs failed to file a response. Id. at pp. 6-7.

## Summary of Recommendation

The proposed second amended complaint is not futile. The court has subject matter jurisdiction over plaintiffs' claims and abstention is not warranted. Plaintiffs have not failed to state a claim upon which relief can be granted. It is **RECOMMENDED** that plaintiffs' motion for leave to file the proposed second amended complaint be **GRANTED**. Additionally, it is **RECOMMENDED** that the defendants' request to grant their motion to dismiss the plaintiffs'

---

[2] The second amended complaint names additional plaintiffs and defendants, alleges violations of Title II of the Americans with Disabilities Act and the Religious Land Use and Institutionalized Persons Act in addition to the claims in the first amended complaint, states additional factual allegations supporting the original claims and new claims, and makes allegations regarding proposed subclasses. (See Motion to Amend, Doc. #82, pp. 1-2) (detailing the additions in the proposed second amended complaint).

first amended complaint based on the plaintiffs' failure to respond be **DENIED**, and the court

find that the motion to dismiss is **MOOT**.

<strong>Claims in the Proposed Second Amended Complaint</strong>

Plaintiffs' proposed second amended class action complaint for injunctive and

declaratory relief alleges the defendants failed to provide adequate treatment, denied plaintiffs

and class members the right to be free from punishment, denied plaintiffs and class members the

right to be free from punishment without a jury trial, subjected plaintiffs and class members to

inhumane treatment, failed to provide the least restrictive confinement, violated plaintiffs' and

class members' rights of free speech and association, violated plaintiffs' and class members'

rights to be free from unreasonable searches and seizures, invaded plaintiffs' and class members'

privacy, discriminated against those plaintiffs and class members who are disabled, violated the

due process rights of the plaintiffs and class members who were civilly committed without a

conviction for a sexual offense, and violated some of the plaintiffs' and class members' right to

religious exercise, all in violation of federal constitutional and statutory law. (See Proposed

Second Amended Complaint, Doc. #82-1, pp. 8-9, 73-79, 80-82). Additionally, plaintiffs

challenge as unconstitutional Chapter 25-03.3 of the North Dakota Century Code, which

provides for the commitment of sexually dangerous individuals, and the policies and practices

utilized by the defendants in the enforcement of the statutes in Chapter 25-03.3. Id. at pp. 55-77,

80-81.

<strong>Law and Discussion</strong>

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a

complaint  shall be freely given when justice so requires. The court may deny a motion to amend

if there is a good reason, such as futility of the amendment. <u>Becker v. U. Neb. Omaha</u>, 191 F.3d 904, 907-08 (8th Cir. 1999) (citing <u>Brown v. Wallace</u>, 957 F.2d 564, 566 (8th Cir. 1992)). "There is no absolute right to amend." <u>Id.</u> at 908. However, a motion to amend should be denied on the merits "only if [it] assert[s] clearly frivolous claims or defenses." <u>Buder v. Merrill Lynch, Fenner & Smith, Inc.</u>, 644 F.2d 690, 695 (8th Cir. 1981). "Whether to grant a motion for leave to amend is within the sound discretion of the court." <u>Becker</u>, 191 F.3d at 908.

1.      Unopposed Motion to Dismiss

Defendants contend the court should grant their motion to dismiss based on plaintiffs' failure to respond. (Response to Motion to Amend, Doc. #83, pp. 6-7). Defendants cite Local Rule 7.1, which states that "[a]n adverse party's failure to serve and file a response to a motion *may* be deemed an admission that the motion is well taken." D.N.D. Civ. L.R. 7.1(F) (emphasis added). The Local Rule rests on the discretion of the court to determine whether a failure to respond to a motion should be deemed an admission that a motion is well taken. The court notes it is common practice for a party to seek leave to amend in response to a motion to dismiss. <u>See</u> <u>Jameson v. State Farm Mut. Auto. Ins. Co.</u>, 871 F.Supp.2d 862, 869 (W.D.Mo. 2012) (motion for leave to file second amended complaint filed in response to defendant's motion to dismiss); <u>Kraus v. CitiMortgage, Inc.</u>, No. 11-3213, 2012 WL 1581113, at *1 (D.Minn. May 4, 2012) (plaintiffs filed a motion to amend in response to defendants' motion to dismiss).  Further, a motion to amend a complaint may moot a pending motion to dismiss. <u>Pure Country, Inc. v. Sigma Chi Fraternity</u>, 312 F.3d 952, 956 (8th Cir. 2002) (citation omitted). Accordingly, the court should decline to grant defendants' motion to dismiss based on plaintiffs' failure to file a response.

2.      Subject Matter Jurisdiction

Defendants contend plaintiffs are improperly requesting this court to review the state

district courts' orders civilly committing the plaintiffs and continuing their commitments as

sexually dangerous individuals, in contravention of the Rooker-Feldman doctrine. (Response to

Motion to Amend, Doc. #83, pp. 7-8). Plaintiffs aver they are bringing "a broad challenge to

North Dakota's civil commitment system" and are challenging the Department of Corrections

and Rehabilitation's policies and procedures used in referring an individual for civil commitment

and the pre-hearing treatment of those individuals, the conditions of confinement at the North

Dakota State Hospital, the Department of Human Service's failure to provide adequate treatment

in the least restrictive environment, the constitutionality of the state statute governing the civil

commitments of sexually dangerous individuals, codified at N.D. Cent. Code ch. 25-03.3, and

the "executive action implementing that statute." (Reply Brief, Doc. #92, pp. 1-2); (see also

Proposed Second Amended Complaint, Doc, #82-1, p. 5) ("[P]laintiffs allege that North

Dakota's system of civil commitment of sexually dangerous individuals violates federal and

constitutional law.").

The Rooker-Feldman doctrine is derived from two United States Supreme Court cases in

which the Court held that federal district courts lack subject matter jurisdiction to review state

court judgments. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia

Court of Appeals v. Feldman, 460 U.S. 462 (1983). The Rooker-Feldman doctrine is narrow and

"is confined to cases . . . brought by state-court losers complaining of injuries caused by state-

court judgments rendered before the district court proceedings commenced and inviting district

court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp,

544 U.S. 280, 284 (2005). It does not apply to a suit seeking review of a state agency action. Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 644, n. 3 (2002). It does not bar an "independent claim" even when "the same or a related question was earlier aired between the parties in state court." Skinner v. Switzer, 131 S.Ct. 1289, 1297 (2011) (internal quotation marks and citation omitted). Additionally, statutes and rules governing state court decisions may be challenged in lower federal courts and are not precluded by the Rooker-Feldman doctrine. Id. at 1298.

First, defendants specifically contend this court lacks jurisdiction over the due process claim related to plaintiffs who were civilly committed without a conviction for a sexual offense. (Response to Motion to Amend, Doc. #83, p. 8). However, addressing the claim would not require this court to review and reject the state courts' findings that those particular plaintiffs are sexually dangerous individuals under the current state law. Rather, the due process claim is an independent claim challenging the constitutionality of the state statute that fails to require an adult conviction for a sexual offense as a prerequisite to the civil commitment of an individual as sexually dangerous. See Skinner, 131 S.Ct. at 1298 (state statute may be challenged in a federal action) (citing Feldman, 460 U.S. at 487; Exxon 544 U.S. at 286).

Additionally, the claim is not inextricably intertwined with the state court decisions. "[A] federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." Penzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring).[3] Success on plaintiffs' claim

---

[3] Eighth Circuit Judge Melloy questioned in his concurring opinion in Dodson v. Univ. of Ark. for Med. Scis., 601 F.3d 750, 758 (8th Cir. 2010), "whether the 'inextricably intertwined' language has any independent significance" post Exxon, in which the Supreme Court clarified

seeking prospective relief is not dependant upon a finding that the state courts wrongly decided the issues; rather, plaintiffs' claim generally challenges the governing statute's definition of a sexually dangerous individual, which challenge is not precluded by <u>Rooker-Feldman</u>.[4]

Second, defendants state that plaintiffs' references in the class definitions section of the proposed second amended complaint to N.D. Cent. Code ch. 25-03.3 and to "court orders detaining them, transferring them, confining them, or jailing them pending probable cause hearings, evaluations, or commitment proceedings" demonstrate that plaintiffs are challenging

---

[4] that the <u>Rooker-Feldman</u> doctrine bars subject matter jurisdiction only in "limited circumstances." <u>See</u> <u>Exxon</u> 540 U.S. at 291. Judge Melloy noted that "[i]n the majority of other circuits, the 'inextricably intertwined' language in <u>Feldman</u> does not impose an independent substantive test . . . [and] [f]ollowing <u>Exxon</u>, several circuits have concluded that the [Supreme] Court abandoned the 'inextricably intertwined' part of the doctrine." <u>Dodson</u>, 601 F.3d at 758-59 (citing <u>Davani v. Va. Dep't of Transp.</u>, 434 F.3d 712, 719 (4th Cir. 2006); <u>East Hill Synagogue v. City of Engelwood</u>, 240 Fed.Appx. 938, 941 n.1 (3d Cir. 2007) (unpublished); <u>McCormick v. Braverman</u>, 451 F.3d 382, 394-95 (6th Cir. 2006); <u>Bolden v. City of Topeka</u>, 441 F.3d 1129, 1143 (10th Cir. 2006); <u>States Res. Corp. v. Architectural Team, Inc.</u>, 433 F.3d 73, 79-80 (1st Cir. 2005); <u>Hoblock v. Albany County Bd. of Elections</u>, 422 F.3d 77, 86-87 (2d. Cir. 2005). However, since <u>Dodson</u>, the Eighth Circuit has applied the "inextricably intertwined" standard as defined by Justice Marshall in his concurring opinion in <u>Penzoil</u>. <u>See</u> <u>Robins v. Ritchie</u>, 631 F.3d 919, 925 (8th Cir. 2011). In light of the Eighth Circuit's reliance on the standard in <u>Robins</u>, and because the outcome of this matter does not hinge on whether the court applies the "inextricably intertwined" standard, the instant recommendation addresses the claims as if there is some independent significance to the standard.

[4] N.D. Cent. Code § 25-03.3-01(8) defines a sexually dangerous individual as "an individual who is shown to have engaged in sexually predatory conduct and who has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others." Plaintiffs note that former Attorney General Heidi Heitkamp testified before the House Judiciary Committee that an individual could be committed as sexually dangerous under the bill, which became N.D. Cent. Code ch. 25-03.3, without a conviction for a sexual offense and that the bill applied to minors. (Proposed Second Amended Complaint, Doc. #82-1, p. 76). Additionally, plaintiffs note that North Dakota is the only state that allows for the commitment of sexually dangerous individuals without a charge or conviction of a sexual offense. <u>Id.</u>

their civil commitments. (Response to Motion to Amend, Doc. #83, pp. 8-9). However, it is clear that plaintiffs reference the state statutes and the state court orders, evaluations and commitment proceedings in that section of the proposed second amended complaint as an effort to define the plaintiffs and the class, and not as an attempt to seek review of the state court judgments. (See Proposed Second Amended Complaint, Doc. #82-1, pp. 8-1) (defining the proposed class as individuals who have been or will be civilly committed as sexually dangerous individuals or subject to civil commitment proceedings).

Finally, defendants contend this court does not have jurisdiction over plaintiffs' claims that they are not being treated in the least restrictive facility, and that the conditions of some of the plaintiffs' confinement violate the Americans with Disabilities Act ("ADA") and Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (Response to Motion to Amend, Doc. #83, pp. 9-10). Defendants have not alleged that any of the plaintiffs have raised claims relating to the treatment facility, the ADA or RLUIPA before the state district courts. Those claims appear to have only been raised before this court, as have the remaining claims challenging the conditions of plaintiffs' confinement. These claims are not barred by the Rooker-Feldman doctrine because the challenges do not invite this court to review and reject any state court judgments. See Exxon, 544 U.S. at 284 (2005). The challenges to plaintiffs' conditions of confinement, including the ADA and RLUIPA claims, are independent and not inextricably intertwined with the state district court orders finding plaintiffs are sexually dangerous individuals. See Youngberg v. Romeo, 457 U.S. 307 (1982) (illustrates that involuntarily committed individuals may challenge their conditions of confinement in lower federal courts); see also Karsjens v. Jesson, No. 11-3659, 2014 WL 667971 (D. Minn. Feb. 20, 2014) (civilly

committed sex offenders alleged claims related to the conditions of their confinement in federal district court).

3.      Abstention

Under the doctrine of <u>Younger v. Harris</u>, 401 U.S. 37 (1971), federal courts should abstain from exercising jurisdiction when it would interfere with certain ongoing state judicial proceedings. "Circumstances fitting within the <u>Younger</u> doctrine . . . are 'exceptional.'" <u>Sprint Commc'ns v. Jacobs</u>, 134 S.Ct. 584, 588 (2013) (quoting <u>New Orleans Pub. Serv., Inc. v. Council of City of New Orleans</u>, 491 U.S. 350, 367-68 (1989) (<u>NOPSI</u>)). "[F]ederal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not 'refus[e] to decide a case in deference to the States.'" <u>Id.</u> (quoting <u>NOPSI</u> 491 U.S. at 368). "Abstention is not in order simply because a pending state-court proceeding involves the same subject matter." <u>Id.</u> (citing <u>NOPSI</u> 491 U.S. at 373).

Recently, the Supreme Court clarified that the <u>Younger</u> abstention doctrine applies only in three "exceptional" categories of cases:

> First, <u>Younger</u> preclude[s] federal intrusion into ongoing state criminal prosecutions. Second, certain civil enforcement proceedings warrant[ ] abstention. Finally, federal courts refrain[ ] from interfering with pending civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions.

<u>Id.</u> at 591 (citations and internal quotations omitted). Additional factors the court should consider are whether there is "an ongoing state judicial proceeding," which "implicate[s] important state interests," and provides an "adequate opportunity in the state proceeding[] to raise constitutional challenges." <u>Middlesex County Ethics Comm. v. Garden Sate Bar Ass'n</u>, 457 U.S. 423, 432 (1982); <u>see also</u> <u>Sprint</u>, 134 S.Ct. at 593 (The <u>Middlesex</u> factors are not dispositive, but are "*additional* factors appropriately considered by the federal court before invoking <u>Younger</u>.").

Defendants do not cite or present any argument that the "exceptional" categories of cases enunciated in Sprint apply to the instant action. Rather, they rely on the Middlesex factors to urge the court to abstain.[5] (See Memorandum in Support of Motion to Dismiss, Doc. #52, pp. 10-12; Response to Motion to Amend, Doc. #83, pp. 10-11). The first category of exceptional cases does not apply because there are no ongoing state criminal prosecutions. The third category of exceptional cases has been held to apply to a state's contempt proceeding and a state's process requiring the posting of bond pending an appeal. See NOPSI, 491 U.S. at 368 (citing Juidice v. Vail, 430 U.S. 327, 336, n.12 (1977); Penzoil Co. v. Texaco, Inc., 481 U.S. 1, 13 (1987)). "Both Juidice and [Penzoil] involve challenges to the processes by which the State compels compliance with the judgments of its courts." Penzoil, 481 U.S. at 13-14. The third category does not apply because plaintiffs do not challenge any state court orders or processes impacting the state court's ability to perform its core judicial function, and as noted above, defendants have not presented any argument to the contrary.

The second category of exceptional cases "have generally concerned state proceedings 'akin to a criminal prosecution' in 'important respects.'" Sprint 134 S.Ct. at 592 (quoting Huffman v. Pursue, Ltd., 420 U.S. 592, 604 (1975)). "Such enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." Id. (citation omitted). "In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action." Id. (citations omitted).

---

[5] Defendants did not specifically cite to Middlesex with regard to the additional factors to be considered. However, they are the factors on which defendants rely. (See Memorandum in Support of Motion to Dismiss, Doc. #52, pp. 10-12; Response to Motion to Amend, Doc. #83, pp. 10-11).

"Investigations are commonly involved, often culminating in the filing of a formal complaint or charges." Id. (citations omitted).

Plaintiffs do not explicitly state the civil commitment hearings are not akin to criminal proceedings. Rather, their argument seems to be that abstention is not warranted because the federal action will not interfere with any ongoing state court proceedings since plaintiffs seek only prospective relief and the majority of their claims relate to the conditions of their confinement. Whether there would be interference with ongoing state judicial proceedings is the first factor the court must address under Middlesex.

Plaintiffs contend that the civil commitment proceedings are not ongoing with regard to the named plaintiffs who have already been committed as sexually dangerous individuals.[6] (Reply Brief, Doc. #92, p. 13). Defendants state that "[t]he underlying commitment proceedings are currently before the state district courts." (Memorandum in Support of Motion to Dismiss, Doc. #52, p. 52). The court disagrees. The underlying commitment proceedings are not currently before the state district courts, except as to two of the plaintiffs. The majority of plaintiffs have already been committed as sexually dangerous individuals and their commitment proceedings have concluded. It appears defendants are attempting to allege, although it is not clearly articulated, that the civilly committed plaintiffs' proceedings are ongoing because state statutes provide for an annual review and allow the executive director to petition for the discharge of a committed individual at any time. See N.D. Cent. Code §§ 25-03.3-17 and 25-03.3-18. However,

_____

[6] All of the named plaintiff except for two have been committed as sexually dangerous individuals. (Proposed Second Amended Complaint, Doc. #82-1, pp. 5-6). One of the plaintiffs, Paul Olie, was awaiting his commitment proceeding at the time the plaintiffs submitted the proposed second amended complaint. Id. at p. 6. Another plaintiff, Joshua Keeping, was undergoing an evaluation for commitment. Id.

if the court were to accept defendants' position, the plaintiffs' proceedings would always be ongoing as long as they were civilly committed. The court rejects defendants' rationale and finds that the majority of plaintiffs do not have ongoing proceedings.[7]

As to the two named plaintiffs whose civil commitment proceedings are pending, plaintiffs contend there will be no impact on those proceedings; therefore abstention is inappropriate. Plaintiffs cite Gerstein v. Pugh, in which the Supreme Court noted the Younger abstention doctrine did not apply where plaintiffs challenged the legality of their pretrial detention without a preliminary hearing. 420 U.S. 103, 108 n. 9. (1975). Younger abstention was inapplicable because the injunction sought by plaintiffs "was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecutions." Id.

Additionally, plaintiffs rely on Oglala Sioux Tribe v. Van Hunnik, No. 13-5020, 2014 WL 317657, at *3 (D.S.D. Jan. 28, 2014). In Oglala Sioux plaintiffs alleged the "defendants' policies, practices and procedures relat[ed] to the removal of Native American children from their homes during 48-hour hearings" violated federal constitutional and statutory law. Id. at *1. Specifically, plaintiffs challenged the removal of the children from their homes without a timely or adequate hearing, and "coercing the parents into waiving their rights . . . to such a hearing."

---

[7] Another federal court has found a similar Younger abstention argument unpersuasive. See Huftile v. Miccio-Fonseca, No. CIV S-03-1522, 2009 WL 3011426, at *14 n.15 (E.D. Cal. Sept. 17, 2009). In Huftile the plaintiff was a civil detainee under California's Sexually Violent Predator Act and was "subject to annual review of his mental conditions and a hearing if his mental health evaluation showe[d] his condition ha[d] improved." Id. The court stated that "[w]ere defendant's rationale to be adopted, plaintiff could never file an action in federal court as long as he was civilly committed because state review proceedings would always be, in a sense, ongoing." Id.

Id. At least one of the plaintiffs had an ongoing case, and the court noted there would be "48-hour hearings involving Indian children during the pendency of [the] litigation . . . ." Id. at *4. The court found "abstention [was] not appropriate under the second exceptional circumstance" where plaintiffs were "not challenging any pending state court action" or "any ruling by the state court." Id. at *3. The court noted that "plaintiffs [were] only seeking prospective relief and, as such, any order by [the] court would not impact an ongoing state proceeding." Id.

In considering the first Middlesex factor, the court concludes, as noted above, that there are no perpetual ongoing proceedings with regard to those plaintiffs who have already been civilly committed. With regard to the two plaintiffs who are in the commitment process, the challenges to the conditions of their confinement would not affect any ongoing state proceedings and abstention is not warranted with regard to those claims. Further, only prospective relief is sought, as it was in Oglala Sioux, and therefore it appears any ongoing civil commitment proceedings would not be impacted. Finally, the court notes that whether or not the proceedings are ongoing and whether those proceedings would be impacted are not this court's only concern. As in Gerstein, this court's decision should partially hinge on whether the plaintiffs can adequately raise their claims in any pending proceedings before the state courts.

Before the court addresses the final Middlesex factor it notes that plaintiffs concede the second factor, that the State of North Dakota has an important interest in enforcing its statute providing for the commitment of sexually dangerous individuals. Despite the state's interest, the final Middlesex factor makes it clear that abstention is not warranted in this case.

Plaintiffs do not appear to have an adequate opportunity to raise their claims challenging their conditions of confinement or the policies and practices utilized by the defendants in

enforcing the statutes in any pending state court proceedings. At the preliminary hearing the court determines whether "there is probable cause to believe the respondent is a sexually dangerous individual," and at the commitment proceeding the court "determine[s] whether the respondent is a sexually dangerous individual." N.D. Cent. Code §§ 25-03.3-11 and 25-03.3-13. At review hearings the court determines whether the individual remains sexually dangerous or should be discharged. Id. at § 25-03.3-17. The state statutes seem to limit the issues that can be addressed at the state district court hearings. State court decisions generally reinforce this interpretation.

In In re B.V., the North Dakota Supreme Court upheld the state district court's finding that N.D. Cent. Code §§ 25-03.3-13 does "not allow the district court to consider treatment options but rather allowed the district court *only* to commit the respondent into the care of the Department of Human Services and the department had the responsibility to consider treatment options." 2006 ND 22, ¶¶ 16-17, 708 N.W.2d 877, 882-83 (emphasis added). Additionally, this court has taken judicial notice of the state district order for commitment of plaintiff Gerald Lee DeCoteau ("DeCoteau"). (See Order Granting Unopposed Motion, Doc. #98). The state district court noted in the order that "DeCoteau made a statement about the treatment he has received at the State Hospital." (Order for Commitment, Doc. #96-2, p. 4). The state district court declined to rule on DeCoteau's allegations and stated "[t]he Court believes the State Hospital should receive and investigate [DeCoteau's] complaints and hold any hearings as may be appropriate." Id. Based on In re B.V. and the order for the commitment of DeCoteau it is apparent the initial commitment proceedings would not provide an adequate opportunity for any of the plaintiffs to raise their claims challenging their conditions of confinement, and it is unlikely they would be

14

allowed to raise issues regarding the policies and practices utilized by the defendants in the

enforcement of the statutes, especially considering many of those practices and procedures

would not be utilized by the defendants until after the individual was committed. Although it

appears plaintiffs could challenge the constitutionality of the state statutes at the initial

commitment proceedings, see In re Maedche, 2010 ND 171, 788 N.W.2d 331, there is no

indication the two plaintiffs involved in the commitment proceedings have or intend to raise

those claims, and they would not be able to bring the claims as part of a class action in their

individual commitment proceedings. Finally, as noted above, since only prospective relief is

sought in this case those individuals' commitment proceedings would not be impacted.[8]

Therefore, regardless of whether the two plaintiffs who are in the process of potentially being

civilly committed as sexually dangerous individuals are deemed to be involved in ongoing civil

commitment proceedings, abstention is not warranted.

    This court has found only one case in which a state district court judge exercised

authority to address a committed individual's conditions of confinement at a review hearing, and

the state district court's review was limited to whether the individual was receiving the least

restrictive treatment. In Wheelan v. A.O., "[t]he trial court concluded a discharge hearing was

---

[8] As a practical matter, the two plaintiffs who had pending commitment proceedings when plaintiffs submitted the motion for leave to file a second amended complaint should be through the proceedings. Paul Olie was awaiting his commitment proceeding and Joshua Keeping was undergoing an evaluation. (Proposed Second Amended Complaint, Doc. #82-1, p. 6). The commitment proceedings are required to be held within sixty days of the finding of probable cause. N.D. Cent. Code § 25-03.3-13. The court recognizes plaintiffs contend the commitment hearings often do not occur within the mandated time frame. (Proposed Second Amended Complaint, Doc. #82-1, p. 22). However, given that the plaintiffs were seemingly close to the time that their commitment proceedings were required to be held, and that the motion for leave to file a second amended complaint was filed on January 21, 2014, it is likely the two plaintiffs have already had their commitment hearings.

the appropriate proceeding to exercise limited judicial review of whether the decision of the executive director [regarding treatment] violated the statute." 2011 ND 26, ¶7, 793 N.W.2d 471, 474. "The trial court proceeded to make specific findings on whether A.O.'s treatment program at the North Dakota State Hospital was the least restrictive available treatment facility or program to achieve the purposes of N.D.C.C. ch. 25–03.3." Id. However, other state district courts have not come to the same conclusion as the court did in Wheelan. This court has taken judicial notice of the state court transcript of the review hearing of plaintiff Gerald DeCoteau ("DeCoteau"). (See Order Granting Unopposed Motion, Doc. #98). At DeCoteau's review hearing, also known as a discharge hearing, the state district court judge informed DeCoteau that it could not entertain his challenges to the conditions of his confinement and that the court was limited to determining whether he could be discharged under the state statute.[9] (State Court Transcript, Doc. #96-1, p. 5). Plaintiffs have also submitted the declaration of a local attorney who stated that the state district court would not consider his civilly committed client's claims related to the conditions of his confinement within the context of the annual review hearing, and the state district court judge found those claims could not be addressed in proceedings pursuant to N.D. Cent. Code ch. 25-03.3.[10] (Declaration, Doc. #93, p. 1).

_____

[9] DeCoteau's review hearing took place on March 8, 2012. (State Court Transcript, Doc. #96-1, p. 2). Wheelan was decided on February 8, 2011. 2011 ND 26, 793 N.W.2d 471

[10] The review hearing was held in July of 2013. (Declaration, Doc. #93, p. 1). The attorney attempted to raise claims related to the confiscation of his client's legal materials and issues regarding attorney access. Id. Ironically, the attorney states that he filed a separate action in the state district court in Stutsman County where the North Dakota State Hospital is located to challenge his client's conditions of confinement, but that judge directed the attorney to raise the claims before the state district court judge who had civilly committed his client. Id. at p. 2. It appears the attorney was left with no avenues to pursue his client's claims in the state courts.

It is unclear whether any of the plaintiffs have an annual review hearing scheduled and pending before the state district courts. Assuming there is a pending proceeding, it appears some state district courts may allow claims related to the least restrictive treatment, while others will not. It does not appear the plaintiffs would be allowed to raise other claims related to the conditions of their confinement at a review hearing, and it is unlikely they would be allowed to raise issues regarding the policies and practices utilized by the defendants in the enforcement of the statutes, other than claims related to the least restrictive treatment, and even then it would depend on whether the state district court judge decides to exercise limited review of the decision of the executive director. In light of all of the circumstances, abstention is not warranted because there is no consistent, predictable and adequate opportunity for the plaintiffs to raise their claims regarding their conditions of confinement and regarding the policies and practices utilized by the defendants in the enforcement of the statutes in proceedings before the state courts. Additionally, although it appears plaintiffs could challenge the constitutionality of the state statutes at the review or discharge hearings, see In re P.F., 2008 ND 37, 744 N.W.2d 724, there is no indication any of the plaintiffs have raised or intend to raise those claims, and they would not be able to bring the claims as part of a class action in their individual review hearings. Finally, as noted above, since only prospective relief is sought in this case the plaintiffs' review hearings would not be impacted. Therefore, even if there are pending review hearings before the state courts, abstention is not warranted.[11]

---

[11] It is worth reiterating that there is no indication that any of the plaintiffs have pending review or discharge hearings, so it appears the majority of plaintiffs do not have ongoing state court proceedings.

4.	Failure to State a Claim Under the ADA

An action fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A complaint states a plausible claim for relief if its 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Branden v. Wal-Mart Stores, Inc.</u>, 588 F.3d 585, 594 (8th Cir. 2009) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). There must be "more than the sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678. "It is not, however, a 'probability requirement.'" <u>Branden</u>, 588 F.3d at 594 (quoting <u>Iqbal</u>, 556 U.S. at 678)). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." <u>Id.</u> (citations omitted). The court must accept plaintiffs' factual allegations as true and grant all reasonable inferences in plaintiffs' favor. <u>Id.</u> at 594-95. The facts pled must "give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Id.</u> at 595 (quoting <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (per curiam)).

To state a claim under Title II of the ADA plaintiffs must allege (1) they are qualified individuals with a disability; (2) they were excluded from participation in or denied the benefits of a public entity's services, programs or activities, or were otherwise discriminated against; and (3) such exclusion, denial or discrimination was because of the disability. <u>Layton v. Elder</u>, 143 F.3d 469, 472 (8th Cir. 1998). Defendants contend plaintiffs have not adequately alleged any of the elements. (Response to Motion to Amend, Doc. #83, pp. 13-15).

Defendants state the proposed second amended complaint includes no factual allegations to support that plaintiffs are persons with disabilities within the meaning of the ADA.

Defendants infer plaintiffs are alleging they are disabled because plaintiffs have sexual behavior disorders, which are excluded from the definition of a disability under the ADA. Id. at p. 13. It can be reasonably inferred from the facts in the proposed second amended complaint that plaintiffs are alleging they are disabled because they meet the state statute defining a sexually dangerous individual. The state statute requires the committed individual to have "a sexual disorder, personality disorder, or other mental disorder or dysfunction." See N.D. Cent. Code §§ 25-03.3-01(8). Therefore, plaintiffs could have a mental condition other than a sexual disorder that meets the definition of a disability under the ADA. See 42 U.S.C. § 12102(1) (definition of a disability).

Defendants also contend plaintiffs have not alleged how their impairments limit one or more major life activities such that the impairment is severe enough to be considered a disability. (Response to Motion to Amend, Doc. #83, p. 14). "Major life activities" include functions such as learning, reading, thinking, communicating and working. See 42 U.S.C. § 12102(2). It can be inferred from plaintiffs' proposed second amended complaint that at least some plaintiffs have limitations on these and other activities, and plaintiffs have provided facts supporting that allegation. For example, plaintiffs describe different treatment tracks including one for those with lower intellectual functioning, and note that the definition of a sexually dangerous individual includes those who are "intellectually disabled." (See Proposed Second Amended Complaint, Doc. #82-1, pp. 19, 28-29). Additionally, an individual may meet the ADA definition of disabled if he is regarded as having an impairment, regardless of any actual limitation on any major life activity. See 42 U.S.C. § 12102(1).

Defendants state there are no facts in the proposed second amended complaint to support the remaining two elements. However, plaintiffs' proposed second amended complaint contains numerous facts suggesting they were denied a public entity's programs and services or were otherwise discriminated against because they are civilly committed as sexually dangerous individuals. Plaintiffs allege that during the commitment process while awaiting an evaluation they receive "no treatment or access to any of the services, facilities, or privileges" that other inmates receive. (See Proposed Second Amended Complaint, Doc. #82-1, p. 22). After commitment they have "fewer services, facilities, and privileges" than inmates and more restrictions than other civilly committed individuals. Id. at pp. 24-25; see also pp. 30-55, 73-75, 78-79, 82 (describing how the sexually dangerous individuals' treatment, services and activities are different than other civilly committed individuals at the North Dakota State Hospital and other individuals confined by the State of North Dakota, the Department of Human Services, the North Dakota State Hospital, and the North Dakota Department of Corrections, including but not limited to the denial of treatment, medical and dental care, work opportunities, recreation, commissary items, property, access to the courts, and appropriate placements). Plaintiffs have pled enough facts to state a plausible claim under Title II of the ADA.

### Conclusion

The proposed second amended complaint is not futile. The narrow Rooker-Feldman doctrine does not deprive this court of subject matter jurisdiction, abstention pursuant to Younger is not warranted, and plaintiffs have stated claims upon which relief can be granted. It is **RECOMMENDED** that plaintiffs' motion for leave to file a second amended complaint be **GRANTED**. Additionally, it is **RECOMMENDED** that defendants' request to grant their

motion to dismiss the plaintiffs' first amended complaint based on plaintiffs' failure to respond

be **DENIED**, and the court find that the motion to dismiss is **MOOT**.

Dated this 24th day of June, 2014.

/s/ *Karen K. Klein*
Karen K. Klein
United States Magistrate Judge

## NOTICE OF RIGHT TO OBJECT

Pursuant to Rule 72(a) and (b), Federal Rules of Civil Procedure, and District of North

Dakota Local Court Civil Rule 72.1(D)(2) and (3), any party may object to this Report and

Recommendation by filing with the Clerk of Court no later than July 11, 2014, a pleading

specifically identifying those portions of the Report and Recommendation to which objection is

made and the basis of any objection. Responses to any objections must be filed no later than July

28, 2014. Failure to object or to comply with this procedure may forfeit the right to seek review

in the Court of Appeals.