# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

Rodney J. Ireland, Lester McGillis, Gerald )
DeCoteau, William Carter, Ryan Corman. )
Dustin Dean, Matthew Graham, Terry )
Greak, Glenn Halton, Robert Hoff, Monte )
Hojian, Jeremy Johnson, Michael Kruk, )
Garrett Loy, Kevette Moore, Cruz Muscha, )
Darin Napier, Paul Oie, Timothy Olpin, )
Larry Rubey, Christopher Simon, Kelly )
Tanner, John Westlie, Robert Lilley, Darl )
Hehn, Oliver Wardlow, Joshua Keeping, )
Matthew Dyer, Travis Wedmore, Kyle )
Aune, Marcus Bartole, Jason Gores, Estel )
Naser, Andrew Olafson, Stanton Quilt, )
Raymond Voisine, and Eugene Wegley, )
                                        )
           Plaintiffs,                  )
                                        )          Case No. 3:13-cv-3
     vs.                                )
                                        )   **REPORT AND RECOMMENDATION**
Maggie D. Anderson, Executive Director, )
North Dakota Department of Human        )
Services, in her individual and official )
capacity, Alex Schweitzer, in his       )
individual capacity, Leann Bertsch,     )
Director, North Dakota Department of    )
Corrections and Rehabilitation, in her  )
individual and official capacity, State of )
North Dakota, North Dakota Department of )
Human Services, North Dakota Department )
of Corrections and Rehabilitation, North )
Dakota State Hospital, and Dr. Rosalie  )
Etherington, Superintendent of the North )
Dakota State Hospital, in her official  )
capacity,                               )
                                        )
           Defendants.                  )

The named plaintiffs in this proposed class action are thirty-seven[1] individuals (1) who are civilly committed as sexually dangerous individuals, or (2) who were previously committed

---

[1] The Second Amended Complaint, (Doc. #112), named twenty-nine plaintiffs, and the Third Amended Complaint, (Doc. #180), names thirty-seven.

as sexually dangerous individuals, or (3) who had been alleged to be sexually dangerous individuals but were never civilly committed. This Report and Recommendation addresses defendants' motion for partial dismissal for failure to state a claim, (Doc. #115), and defendants' motion to dismiss the claims of certain plaintiffs as moot, (Doc. #143).

## Summary of Report and Recommendation

Plaintiffs make broad challenges to the system under which the state of North Dakota confines persons who are determined to be sexually dangerous individuals. Plaintiffs' challenges raise issues which are fundamental to values of freedom and liberty.

The state asserts that this court lacks jurisdiction to address many of plaintiffs' claims, contending that the exercise of federal jurisdiction would improperly interfere with decisions made by the state courts. While any relief that might ultimately be awarded would need to be tailored to address that issue, this court recommends against dismissal of plaintiffs' claims on res judicata grounds at this time. This court recommends that certain claims be dismissed: claims involving plaintiffs who are not currently civilly committed, claims against the Department of Corrections and Rehabilitation (DOCR) and its director, claims against state officials in their personal capacities, and claims alleged under the Americans with Disabilities Act.

## Procedural History

Three plaintiffs, acting pro se, initiated this action. After review of the original complaint pursuant to 28 U.S.C. § 1915, the court appointed counsel to represent the plaintiffs. (Doc. #27). Appointed counsel filed an amended complaint. (Doc. #40). Defendants filed a motion to dismiss, (Doc. #51), and in response plaintiffs sought leave to file a second amended complaint, (Doc. #82). A July 25, 2014 order granted plaintiffs leave to file a second amended complaint, and denied defendants' motion to dismiss the first amended complaint. (Doc. #102).

After the second amended complaint was filed, (Doc. #112), defendants answered, (Doc. #116), and again moved to dismiss for failure to state a claim, (Doc. #115). Subsequently, defendants filed a separate motion to dismiss the claims of two named plaintiffs, who are no longer civilly committed, as moot. (Doc. #143). Next, plaintiffs moved for permission to file a third amended complaint, (Doc. #150), and defendants' motions to dismiss were stayed pending a decision on the motion to amend the complaint. (Doc. #165). The motion to amend was granted in part and denied in part on May 6, 2015, (Doc. #179), and the parties were given time to file additional briefing on the motions to dismiss in light of that decision. Defendants filed a supplemental brief. (Doc. #185).

**Background**

North Dakota, like many other states, has adopted a statutory process for civil commitment of "sexually dangerous individuals" (SDI's). N.D. Cent. Code ch. 25-03.3. Under that statutory framework, a state's attorney can initiate a civil commitment proceeding by filing a petition with a district court. Id. at § 25-03.3-03(1). If a petition is filed, a person alleged to be an SDI has a statutory right to notice, a right to counsel, a right to a hearing, and a right to services of an expert witness at state expense. Id. at §§ 25-03.3-09 to -13.

At a commitment hearing, the state has the burden to prove, by clear and convincing evidence, that the individual meets the statutory definition of an SDI. To meets its burden, the state must prove (1) that the person has engaged in sexually predatory conduct, (2) that the person has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or another mental disorder or dysfunction, and (3) that the disorder makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others. Id. at § 25-03.3-01(8).

3

Under North Dakota's system, individuals who are found to be SDI's are civilly committed to the custody of the Department of Human Services (DHS) for placement in "an appropriate facility or program at which treatment is available." Id. at § 25-03.3-13. DHS houses SDI's in sections of the North Dakota State Hospital (NDSH). (Doc. #180, p. 36-38).

The governing statutes require that an individual who is civilly committed as an SDI have an annual examination, with an exam report to be provided to the court that ordered the civil commitment. If a person is civilly committed as an SDI, and is indigent, the statutes also give the person a right to an annual examination by a court-appointed expert at state expense. N.D. Cent. Code § 25-03.3-17(2). After receiving an annual report, the court may order further examination and may hold a hearing to determine whether the civil commitment should continue. Id. at § 25-03.3-17(4).

There is a statutory requirement that an individual civilly committed as an SDI receive annual notice of the right to petition for discharge from the commitment. Id. at § 25-03.3-18(1). At a hearing on a discharge petition, the civilly committed individual again has a right to a court-appointed expert at state expense. Id. at § 25-03.3-18(3). At a discharge hearing, it is again the state's burden to prove, by clear and convincing evidence, that the person remains a sexually dangerous individual. Id. at § 25-03.3-18(4). With notice to the state's attorney, DHS may petition the court for a discharge of an SDI "at any time." Id. at § 25-03.3-17(5). Both initial orders for civil commitment as an SDI and orders denying petitions for discharge are appealable to the state supreme court. Id. at § 25-03.3-19.

Plaintiffs contend that the defendants have applied North Dakota's SDI statutes in a manner that results in an unlawful policy of preventive detention in which treatment is not

4

actually provided. (Doc. #180, pp. 31-34, 46-51). Plaintiffs also allege unlawful conditions of confinement—inadequate medical care; lack of educational, work, and religious opportunities; limited access to the courts; limited commissary and recreation privileges; arbitrary property confiscation; arbitrary discipline and punishment; and mistreatment by staff. Id. at 34-46. They assert that SDI's are subject to substantially greater restrictions than are non-SDI's who are committed to NDSH, and that SDI's are subject to greater restrictions than are persons incarcerated by DOCR. Id. at 34-46, 54-59. Plaintiffs also contend that certain policies and practices utilized under N. D. Cent. Code chapter 25-03.3 violate their constitutional and statutory rights. Id. at 59-77.

Plaintiffs name the State of North Dakota as a defendant. Additionally, plaintiffs name DHS and its executive director, Maggie D. Anderson; NDSH and its superintendent, Alex Schweitzer; and DOCR, and its director, Leann Bertsch, as defendants. Plaintiffs name Anderson, Schweitzer, and Bertsch in both their official and personal capacities.[2] Id. at 7-10, 83-86.

The defendants move to dismiss certain claims: those based on the legality of plaintiffs' initial commitments, those based on the constitutionality of chapter 25-03.3, those based on the Americans with Disabilities Act, those against Bertsch and DOCR, and those of plaintiffs who are not currently civilly committed. (Doc. #127, pp. 12, 28-30, 33-43; Doc. #144). While reserving the right to later do so, in the pending motions defendants do not challenge claims as to

---

[2] Pursuant to Federal Rule of Civil Procedure 25(d), defendants recently filed a Notice of Substitution of Rosalie Etherington, as Schweitzer's successor as Superintendent of NDSH. (Doc. #188). Etherington is therefore substituted for Schweitzer on the official capacity claims.

the legality of plaintiffs' continued commitments, the conditions of confinement at NDSH, or the treatment provided to plaintiffs. (Doc. #127, pp. 12, 19).[3]

Defendants also request that the claims of eight plaintiffs who are not currently civilly committed be dismissed. Plaintiffs Matthew Graham and Timothy Olpin had been discharged before defendants filed their September 26, 2014 memorandum in support of their motion to dismiss.[4] (Doc. #127, pp. 33-34). Plaintiffs Rodney J. Ireland and Lester McGillis are the subject of defendants' motion based on mootness. (Doc. #143). Plaintiffs Ryan Corman and Kevette Moore were later discharged from commitment. (Doc. #164, p. 7 n.1). In addition to the six plaintiffs who have been discharged from commitments, defendants seek to dismiss the claims of two plaintiffs who were evaluated, but who were never committed as SDI's—Paul Oie and Joshua Keeping. (Doc. #127, pp. 28-30).

## Law and Discussion

A recent case in a neighboring federal district court addressed Minnesota's statutes governing civil commitment of sex offenders. Although there are significant differences between the Minnesota statutes and the North Dakota statutes, the post-trial opinion in that case, <u>Karsjens v. Jesson</u>, No. 11-3659, 2015 WL 3755870 (June 17, 2015), provides background for this court's recommendations.

> This case challenges the constitutionality of the statutes governing civil commitment and treatment of sex offenders in Minnesota as written and as applied, and in so

---

[3] Defendants' motion to dismiss the second amended complaint included a request to dismiss claims under the federal Religious Land Use and Institutionalized Persons Act (RLUIPA). (Doc. #127, p. 30). Their most recent brief, (Doc. #185), does not address that issue. The court has therefore not addressed that issue in this Report and Recommendation.

[4] Defendants filed their motion to dismiss on August 28, 2014, nearly one month before filing the memorandum in support of that motion. (Doc. #115).

6

doing, challenges the boundaries that we the people set on the notions of individual liberty and freedom, the bedrock principles embedded in the United States Constitution. As has been long recognized, the government may involuntarily detain an individual outside of the criminal justice system through the so-called "civil commitment" process, which permits the state to detain individuals who are suffering from acute symptoms of severe mental illness and who are truly dangerous to the public as a result of their psychiatric condition. But our constitutional preservation of liberty requires that we carefully scrutinize any such deprivation of an individual's freedom to ensure that the civil commitment process is narrowly tailored so that detention is absolutely limited to a period of time necessary to achieve these narrow governmental objectives. After all, the individual who is civilly committed is not being detained in order to be punished for the commission of a crime. If it turns out that the civil commitment is in reality punishment for past crimes or a way to prevent future crimes that might be committed, or, in the words of Justice Anthony M. Kennedy, "[i]f the civil system is used simply to impose punishment after the State makes an improvident plea bargain on the criminal side, then it is not performing its proper function." Kansas v. Hendricks, 521 U.S. 346, 373 (1997) (Kennedy, J., concurring); see also id. ("We should bear in mind that while incapacitation is a goal common to both the criminal and civil systems of confinement, retribution and general deterrence are reserved for the criminal system alone.")

. . . .

It is fundamental to our notions of a free society that we do not imprison citizens because we fear that they might commit a crime in the future. Although the public might be safer if the government, using the latest "scientific" methods of predicting human behavior, locked up potential murderers, rapists, robbers, and, of course, sex offenders, our system of justice, enshrined in rights guaranteed by our Constitution, prohibits the imposition of preventive detention except in very limited circumstances. This strikes at the very heart of what it means to be a free society where liberty is a primary value of our heritage. Significantly, when the criminal justice system and the civil commitment system carry out their responsibilities, the constitutional rights of all citizens, including sex offenders, can be upheld without compromising public safety or disrespecting the rights, concerns, and fears of victims.

Id. at *1.

Distinct from a criminal sentence, a state may constitutionally confine persons who are dangerous, but a state's system for doing so must be narrowly tailored to achieve legitimate governmental objectives. Hendricks, 521 U.S. at 368-69 (holding that where the state has

7

"disavowed any punitive intent," in narrow circumstances states may civilly detain dangerous individuals provided there are "strict procedural safeguards"); Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (noting that the government may not infringe on "fundamental liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.") (internal citation and quotation marks omitted)). The principles of Hendricks and Glucksberg, must be considered in addressing defendants' motions to dismiss.

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. To withstand a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007). "[A] formulaic recitation of the elements of a cause of action will not do." Id. at 555. A court must determine whether the facts in a complaint "plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S.662, 679 (2009). In ruling on a Rule 12(b)(6) motion, the court accepts factual allegations in the complaint as true and construes the pleading in the light most favorable to the non-moving party. The complaint must give a defendant fair notice of the claim. Twombly, 550 U.S. at 555.

**1.      Res Judicata**

Defendants assert that some of plaintiffs' claims are de facto requests for review of the North Dakota state court decisions which ordered plaintiffs' evaluation or commitment, and that the doctrine of res judicata bars this court from considering those claims. Plaintiffs respond that they challenge the constitutionality of North Dakota statutes as construed by the state courts, without challenging the decisions of the state courts in the individual commitment proceedings.

8

Defendants specifically contend the following are barred under res judicata principles:

    (1)    Challenges to commitment orders on grounds that plaintiffs were committed without having been convicted of a sexual offense as an adult;

    (2)    Challenges to commitment orders based on sexual offenses committed as minors;

    (3)    Challenges to state court findings that plaintiffs were likely to engage in further acts of sexually predatory conduct;

    (4)    Challenges to commitment orders on grounds that no right to jury trial is provided under North Dakota statutes;

    (5)    Challenges to detention pending probable cause hearings;

    (6)    Challenges to transfers to and confinement at NDSH for evaluations; and

    (7)    Challenges to procedural orders regarding timing of probable cause hearings.

(Doc. #185, pp. 2-3). Defendants contend that each of the matters listed above involves only past conduct, for which no prospective relief could be provided. Defendants also allege that, since none of the defendants in the instant case were parties to the commitment proceedings, the state court decisions cannot properly be challenged here. Id. at 3.

In the Third Amended Complaint, plaintiffs state that they "do not seek review of their individual state commitment orders or judgments," and "do not seek to enforce the specific state law provisions" of chapter 25-03. (Doc. #180, p. 81, ¶ 147(a)-(b)). At the same time, however, plaintiffs allege:

> None of the findings determined by any state court in connection with any proceeding under [chapter] 25-03.3 should be accorded any preclusive effect since none of those state court findings were made in connection with or in the context of the specific federal . . . claims to be litigated in this action. The claims alleged in this action pose unique questions of proof and different elements than those questions and elements considered, litigated, or determined by any state court in any proceedings under [chapter] 25-03.3.

Id. at 82, ¶ 147(f). In the complaint, plaintiffs seek "<u>prospective, declaratory and injunctive relief only</u> under federal law for violation of their federal constitutional and statutory rights," for claims which "could not be fairly and fully litigated - if they were addressed at all - in their commitment hearings." Id. at 81-82, ¶ 147(c) (emphasis added). Plaintiffs further contend that, in civil commitment matters not involving SDI's, North Dakota does not apply res judicata principles, and that those principles should therefore not be applied in this case. (Doc. #136, p. 12).

In considering application of the res judicata doctrine, federal courts must determine whether the state court which rendered the judgment would give it res judicata effect. <u>Brown v. St. Louis Police Dep't</u>, 691 F.2d 393, 395 (8th Cir. 1982). North Dakota's law of res judicata "prevents relitigation of claims that were raised, or could have been raised, in prior actions between the same parties or their privies." <u>Ungar v. N.D. State Univ.</u>, 2006 ND 185, ¶ 11, 721 N.W.2d 16, 20. Defendants acknowledge that they were not parties to the individual state court proceedings which resulted in plaintiffs' civil commitments, (Doc. #127, p. 29; Doc. #185, p. 3), and do not allege that they are in privity with those who were parties to the individual state court proceedings. The application of res judicata appears to be inappropriate on that basis alone.

Defendants' briefing on the res judicata issue is centered on plaintiffs' claims involving commitment of those not convicted of a sexual offense as an adult. (Doc. #127, p. 26). Defendants claim that an SDI who had not been convicted of an adult sexual offense could have argued in the commitment proceeding that the state could not prove that he had engaged in sexually predatory conduct, since he had not been convicted of a crime. Since North Dakota's law of res judicata bars relitigation of claims which <u>could have been raised</u>, as well as those that

10

were actually raised, defendants argue that plaintiffs cannot now raise that challenge. However, since the statute—as construed—does not require a conviction, plaintiffs would always lose that argument in the state courts.

Defendants' res judicata arguments parallel their earlier arguments for dismissal under the Rooker-Feldman doctrine. An earlier Report and Recommendation, (Doc. #99), adopted by the court, (Doc. #102), discussed <u>Skinner v. Switzer</u>, 131 S.Ct. 1289, 1298 (2011), which supports plaintiffs' position that a federal plaintiff may challenge the constitutionality of state statutes as construed by a state court without challenging the adverse decision of the state court itself. In the event plaintiffs ultimately prevail on any of their claims, res judicata principles may impact the contours of any relief awarded. However, in this court's opinion, defendants have not established that any of plaintiffs' claims should be dismissed on res judicata grounds at this stage of the litigation.

**2.      Claims of plaintiffs who are not currently civilly committed as SDI's**

As to the eight plaintiffs who are not currently civilly committed, defendants assert that any claims they may have had are moot, and that they could no longer be granted prospective relief. Defendants cite two cases involving the Minnesota Sex Offender Program (MSOP)—<u>Beaulieu v. Ludeman</u>, 690 F.3d 1017 (8th Cir. 2012), and <u>Evanstad v. Herberg</u>, 994 F. Supp. 2d 995 (D. Minn. 2014). <u>Evanstad</u> involved claims of due process violations while an individual was on "judicial hold" pending MSOP civil commitment proceedings. Evanstad filed the federal complaint after his release from MSOP custody, and the court found that his claims for equitable relief were moot. The court stated:

> An inmate's claims for declaratory and injunctive relief to improve prison conditions are moot when he is no longer subject to those conditions and is not likely to be

subjected to them again. Although Evanstad was not an inmate, the same principle applies. His claim for declaratory and injunctive relief regarding the treatment of persons on judicial hold at the MSOP is moot if he is no longer subject to the challenged treatment and is not likely to be subjected to it again.

994 F. Supp. 2d at 1005 (quotation, alteration, and citation omitted).

In Beaulieu, a group of individuals civilly committed under MSOP challenged the constitutionality of conditions of their confinement at "the Annex," one of several facilities at which those committed under MSOP were housed. After the plaintiffs were transferred from the Annex to another MSOP housing unit, the district court dismissed their claims as moot. The Eighth Circuit affirmed that dismissal. Beaulieu, 690 F.3d at 1024. Although the plaintiffs argued that, because of increasing numbers of persons civilly committed under MSOP, they might be housed at the Annex again in the future, the court considered that claim speculative. The court stated:

> A court properly dismisses a claim as moot if it has lost its character as a present, live controversy of the kind that must exist if the court is to avoid advisory opinions on abstract questions of law. We lack jurisdiction over cases in which, due to the passage of time or a change in circumstances, the issues presented will no longer be live or the parties will no longer have a legally cognizable interest in the outcome of the litigation.

Id. (quotation, alteration, and citation omitted).

Plaintiffs assert that the claims of those who are not currently civilly committed are not moot because (1) their claims are capable of repetition yet evading review, (2) they are at risk of re-commitment, and (3) they suffer "lasting and continuing injury" as of result of violations of their constitutional rights. (Doc. #180, pp. 80-81, ¶ 146(a)-(c)).[5] Plaintiffs also allege that DHS

---

[5] Paragraph 146(d) alleges ongoing economic injuries, but that allegation concerns a claim under the state consumer fraud act, and the court denied permission to amend the complaint to add that claim. (Doc. #179).

might demand payment from them in the future pursuant to N.D. Cent. Code § 25-03.3-21, (Doc. #136, p. 17), but defendants counter that DHS has not actually sought to collect payment from any plaintiff, (Doc. #138, p. 9). Plaintiffs argue that SDI's who have been discharged may still suffer "other negative consequences," asserting that facts about those consequences may be developed during discovery. (Doc. #136, p. 17). In their responsive brief, plaintiffs assert that because of potential negative future consequences, "it makes little sense to enter orders dismissing plaintiffs' claims at this early stage for lack of standing. Of course, only those persons with standing at the time of final judgment will be proper plaintiffs." Id. Contrary to plaintiffs' assertion, it is, however, proper to address standing and mootness at this juncture. Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004). Indeed, questions of standing and mootness are threshold questions in every federal case. St. Paul Fire & Marine inc. Co. v. Barry, 438 U.S. 531, 537 (1978) (stating that the question of mootness must be confronted at the threshold, since it implicates the court's jurisdiction); Warth v. Seldin, 422 U.S. 490, 498 (1975) (noting that standing is always a threshold question).

The third amended complaint specifies that plaintiffs seek only "prospective, declaratory, and injunctive relief," (Doc. #180, pp. 80-81), but does not sufficiently allege how plaintiffs who are not currently civilly committed might be entitled to that prospective relief, and so does not give defendants fair notice. See Iqbal, 556 U.S. at 679. As in Beaulieu, plaintiffs' claims of possible future negative consequences are speculative. This court therefore recommends that the claims of the eight plaintiffs who are not currently in DHS custody be dismissed as moot.

**3.   Claims Against DOCR and Bertsch**

Defendants seek dismissal of DOCR and its director, Bertsch, on grounds that DOCR is not responsible for the treatment provided at NDSH, or for the conditions of confinement at

13

NDSH. Plaintiffs counter that DOCR was responsible for referring them to state's attorneys for possible civil commitment, and that DOCR's role in the referral process is the "first step in the state's implementation of its policy of preventive detention of sex offenders." (Doc. #136, pp. 18-20). Plaintiffs assert that the state statutes' failure to require notice to an inmate in DOCR's custody that he or she is being considered for possible referral for commitment proceedings implicates constitutionally protected liberty interests. Id.

Chapter 25-03.3 outlines the referral process which plaintiffs seek to challenge. Under § 25-03.3-03.1, prior to release of any inmate whose conviction involved "sexually predatory conduct," DOCR assesses the inmate and decides whether to refer the inmate to a state's attorney for possible SDI civil commitment. At least sixty days before the date of the inmate's projected release from DOCR custody, the state's attorney notifies DOCR and the attorney general whether the state's attorney intends to file a civil commitment petition. N.D. Cent. Code § 25-03.3-03.1(4). If DOCR then authorizes a petition, a district court determines whether to order that the individual be detained pending a commitment hearing. Id. at § 25-03.3-08(1). The individual then has a right to a preliminary hearing within 72 hours of being taken into pre-hearing custody. Id. at § 25-03.3-11.

Plaintiffs allege that, even though referral has been under consideration for some time, DOCR does not advise an inmate of possible detention for commitment proceedings until immediately before a scheduled date of release from DOCR custody. Plaintiffs further assert that this lack of notice results in few contested probable cause hearings, and that individuals who want to confer with counsel prior to the commitment hearings are typically transferred to less desirable county jails. (Doc. #180, pp. 24-25, ¶¶ 27-29). It is plaintiffs' position that the DOCR

14

referral process unconstitutionally deprives them of liberty—their expected release from custody—without notice. (Doc. #136, p. 20).

Plaintiffs identify no similar circumstances in which courts have recognized a constitutionally protected liberty interest. In support of their position that DOCR deprives individuals of liberty by not giving advance notice that SDI commitment proceedings are under consideration, plaintiffs cite language of Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982). In Logan, the court stated "absent the necessity of quick action by the State or the impracticality of providing any predeprivation process, a post-deprivation hearing . . . would be constitutionally inadequate." Id. at 436 (internal quotation marks and citation omitted). Logan, however, involved a state employee's claim of unlawful employment termination. Plaintiffs have identified no cases in which a right to pre-petition notice was recognized in a civil commitment matter. There is no right to pre-petition notice in mental health or chemical dependency commitment proceedings. See N.D. Cent. Code §§ 25-03.1-08 to -12. Indeed, in criminal matters, a person being investigated does not have a right to pre-filing notice of a possible charge. In this court's opinion, the third amended complaint fails to state a claim insofar as it alleges a right to pre-petition notice from DOCR. The only claims made against DOCR and Bertsch which are addressed in plaintiffs' response to the motion to dismiss concern the pre-petition referral process. (See Doc. #136). This court therefore recommends that the complaint be dismissed in its entirety as to those two defendants.

4.      **Personal Capacity Claims**

The third amended complaint asserts claims against Anderson, Schweitzer, and Bertsch in both their official and personal capacities. Defendants ask that the complaints against them in

15

their personal capacities be dismissed, since plaintiffs seek only "prospective, declaratory, and injunctive relief." (Doc. #180, pp. 81-82, ¶ 147). Declaratory and injunctive relief are not available in personal capacity claims. See Felt v. Ward, 886 F.2d 848, 857 (7th Cir. 1989) (noting that if the equitable relief sought can only be obtained against the defendants in their official capacities, then the "attempt to obtain declaratory and injunctive relief from the defendants in their personal capacities fails to state a claim upon which relief may be granted").

In the prayer for relief, plaintiffs detail requested declaratory and injunctive relief, and conclude with a request for "any other relief deemed just and appropriate, including prospective monetary relief but only to the extent any defendant is not entitled to absolute or qualified immunity." (Doc. #180, pp. 78-79, 87-88). Plaintiffs contend that immunity is an affirmative and fact-specific defense which has not yet been briefed and which is not properly decided at this stage of the litigation. (Doc. #166, p. 5).

The only potential "prospective monetary relief" which plaintiffs identify is refunds of payments "by SDI's to DHS for their coerced treatment." Id. The third amended complaint does not, however, allege that any plaintiff has made any payment to DHS. In this court's opinion, the third amended complaint does not give defendants fair notice of any claim which might result in plaintiffs being granted prospective monetary relief. See Iqbal, 556 U.S. at 679. Plaintiffs have therefore not pled plausible claims against Anderson, Schweitzer, or Bertsch in their personal capacities. This court therefore recommends that the personal capacity claims against Anderson and Schweitzer be dismissed for failure to state a claim, and that if the claims against Bertsch are not dismissed as discussed in Part 3, that the personal capacity claims against Bertsch be dismissed on the same basis as those against Anderson and Schweitzer.

16

## 5. Americans with Disabilities Act Claims

The third amended complaint, (Doc. #180, pp. 75-76, ¶¶ 136-37), also asserts claims under the Americans with Disablities Act (ADA), alleging that certain plaintiffs were denied appropriate treatment in the least restrictive setting, were treated differently from otherwise similarly situated NDSH patients who are not SDI's, and received no accommodations or treatment for their non-sexual disabilities. Id. at 76, ¶ 137. The ADA excludes "sexual behavioral disorders" from its definition of disability, 42 U.S.C. § 12211, and other courts have recognized that status as a sex offender does not qualify as a disability under the ADA. See, e.g., Sanders v. Hayden, No. 08-C-146, 2008 WL 496241, *2 (E.D. Wis. Feb. 21, 2008); In re Civil Commitment of J.H.R., No. SVP-465-07, 2012 WL 1019986, *5 (N.J. Super. Ct. App. Div. Mar. 28, 2012).

Plaintiffs acknowledge that, because of the ADA's exclusion of "sexual behavioral disorders," only two named plaintiffs have potential ADA claims. (Doc. #180, p. 75, ¶ 136). Those two plaintiffs are McGillis and Olpin, neither of whom is currently civilly committed. See supra Part 2, pp.11-13. Since plaintiffs seek prospective relief only, and since the only plaintiffs who had potential ADA claims are no longer civilly committed, no plaintiff has standing to assert an ADA claim, and the ADA claims should therefore be dismissed.

Even if the claims of those who are not currently committed are not otherwise dismissed, the ADA claims should be dismissed for failure to adequately plead each of the essential elements of an ADA claim. To state a claim under Title II of the ADA, a plaintiff must show that (1) she or he is a person with a disability which substantially limits one or more major life activities, (2) she or he was excluded from participation in or denied the benefit of a public entity's services, programs or activities, or was otherwise discriminated against, and (3) the

17

exclusion, denial, or discrimination was based on the qualifying disability. Randolph v. Rogers, 170 F.3d 850, 858 (8th Cir. 1999); Layton v. Elder, 143 F.3d 469, 472 (8th Cir. 1998). The third amended complaint does not identify any non-sexual disability of McGillis or Olpin which might qualify for ADA coverage or describe how either is substantially limited in major life activities because of a disability.[6] The ADA claims should therefore be dismissed for failure to plead all essential elements. See Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 679.

**Conclusion**

The court **RECOMMENDS** that defendants' motions to dismiss, (Doc. #115; Doc. #143), be **GRANTED IN PART**, specifically in the following respects:

(1) as to all claims of plaintiffs Ryan Corman, Matthew Graham, Rodney J. Ireland, Joshua Keeping, Lester McGillis, Paul Oie, Timothy Olpin, and Kevette Moore,

(2) as to all claims against defendants North Dakota Department of Corrections and Rehabilitation and Leann Bertsch,

(3) as to all claims against Maggie D. Anderson in her personal capacity,

(4) as to all claims against Alex Schweitzer, in both his personal and official capacities, in light of substitution of his successor as to official capacity claims, and

(5) as to all claims asserted pursuant to the Americans with Disabilities Act.

---

[6] An earlier Report and Recommendation stated that the second amended complaint sufficiently pled a plausible claim under Title II of the ADA, (Doc. #99, pp.19- 20), and that Report and Recommendation was adopted by the district judge, (Doc. #102). That conclusion was based on inferences (from the second amended complaint) that plaintiffs met the ADA's definition of disability. The third amended complaint does not include the facts from which those inferences were drawn, and unlike the second amended complaint, the third amended complaint acknowledges McGillis and Olpin as the only plaintiffs diagnosed with non-sexual disorders.

This court further **RECOMMENDS** that the two motions to dismiss be **DENIED** in all other respects.

Dated this 15th day of July, 2015.

>  */s/ Alice R. Senechal*
> Alice R. Senechal
> United States Magistrate Judge

**NOTICE OF RIGHT TO OBJECT**

Pursuant to Federal Rule of Civil Procedure 72(b), and District of North Dakota Civil Local Rule 72.1(D)(3), any party may object to this Report and Recommendation by filing with the Clerk of Court no later than July 29, 2015, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.