# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| Rodney J. Ireland, et al., | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| | ) | Case No. 3:13-cv-3 |
| vs. | ) | |
| | ) | |
| Maggie D. Anderson, Executive Director, | ) | |
| North Dakota Department of Human Services, et al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |

The plaintiffs move for a preliminary injunction, alleging that certain of the defendants' policies and practices interfere with the plaintiffs' right of access to the courts. Specifically, the plaintiffs challenge policies and practices relating to (1) attorneys' use of cell phones during conferences with their clients, (2) designating as contraband plaintiffs' writings which identify North Dakota State Hospital (NDSH) staff members by name, and (3) designating as contraband the plaintiffs' "internet legal materials."

## Summary of Recommendation

Subsequent to an evidentiary hearing, the parties came to agreement on some aspects of policies and practices alleged to infringe on the plaintiffs' right of access to the courts. While the evidence shows that the policies still at issue impede efficiency of communications between plaintiffs and their counsel, the evidence does not show that the plaintiffs have suffered any actual harm as a result of the questioned policies and practices. The plaintiffs therefore do not have a fair chance of prevailing on their access to the courts claim. When that factor is balanced with other factors to be considered on a motion for a preliminary injunction, the plaintiffs have not demonstrated a sufficient basis for the injunction they seek.

**Procedural History**

The plaintiffs, in a proposed class action, bring broad challenges to the system under which the State of North Dakota confines persons who are determined to be sexually dangerous individuals. The named plaintiffs are individuals who (1) are civilly committed as sexually dangerous individuals; (2) were previously committed as sexually dangerous individuals; or (3) are alleged to be sexually dangerous individuals and are in the process of civil commitment proceedings. Under the control of the North Dakota Department of Human Services, individuals who are civilly committed as sexually dangerous individuals reside at the NDSH, which houses the state's Sex Offender Treatment and Evaluation Program (SOTEP).[1]

To date, various motions have culminated in filing of a Sixth Amended Complaint, (Doc. #246), and in dismissal of certain of the plaintiffs' claims—those against state officials in their personal capacities and those alleging violation of the Americans with Disabilities Act as to persons who are no longer civilly committed, (Doc. #244). In addition to the motion for a preliminary injunction, which is the subject of this Report and Recommendation, there is pending a motion for partial summary judgment (which is not yet fully briefed), and a motion to compel discovery.

Among their claims, the plaintiffs assert that their access to the courts is "severely limited." (Doc. #246, p. 40). Specifically, the Sixth Amended Complaint alleges that SOTEP staff have confiscated the plaintiffs' legal papers as contraband, monitored telephonic conferences with counsel if more than one plaintiff is involved, conducted

---

[1] The parties sometimes refer to SOTEP as "Secured Services."

strip searches of plaintiffs after in-person meetings with counsel, and told the plaintiffs that participation in this lawsuit is contrary to treatment and will undermine the possibility of their release from SOTEP. Id. [2]

### Facts

With their motion for a preliminary injunction, the plaintiffs filed various affidavits. (Doc. #172; Doc. #173; Doc. #183-1 to #183-4; Doc. #206; Doc. #208; Doc. #215-2). In addition to the affidavit evidence, the court received evidence at an August 18, 2015 hearing.[3] The only witness at the hearing was Dr. Rosalie Etherington, superintendent of the NDSH. At the close of that hearing, the parties agreed to discuss whether some or all of the plaintiffs' concerns might be addressed through changes in SOTEP policies.

On October 14, 2015, the parties filed a joint status report describing changes to SOTEP policies which the defendants made or clarified subsequent to the evidentiary hearing. (Doc. #261).[4] Specifically, policies which were amended or clarified dealt with extended attorney visiting hours, permitting attorneys' staff to be present at visitations, permitting attorneys to use computers during visitations, conducting "detailed" searches of SOTEP residents after attorney visits only for cause, making telephone service available for SOTEP residents to call their attorneys, and providing for "prompt" return

---

[2] Allegations regarding access to the courts have been included in each of the amended complaints.

[3] The transcript of the August 18, 2015 hearing is in the docket at #238.

[4] In conjunction with the evidentiary hearing, the plaintiffs submitted a proposed order, (Doc. #207), detailing requested policy changes. The joint status report addresses the matters in the context of that proposed order.

of legal mail confiscated during searches of SOTEP residents' rooms. (Doc. #277, pp. 1-2). In addition to filing the joint status report, the parties submitted briefs addressing their positions on the motion for a preliminary injunction. (Doc. #272; Doc. #277; Doc. #278; Doc. #279).

Plaintiffs' post-hearing briefing identifies three specific SOTEP practices alleged to result in a denial of their right of access to the courts: (1) plaintiffs' attorneys not being allowed to use cell phones during in-person conferences with their SOTEP resident clients, (2) plaintiffs' writings which identify SOTEP staff members by name being designating as contraband, and (3) SOTEP staff designating plaintiffs' "internet legal materials" as contraband. (Doc. #279, p. 1). Because they are the only specific matters still in dispute, this Report and Recommendation discusses hearing evidence and affidavit evidence only as it relates to those three matters. Though the defendants contend that the plaintiffs did not precisely raise all three issues in their original brief in support of their motion for a preliminary injunction, (Doc. #272), each of the matters was addressed to some degree at the evidentiary hearing and is therefore addressed herein.

1.  **Use of Cell Phones During Attorney-Client Conferences**

There is no dispute that attorneys visiting their clients who are SOTEP residents are not allowed to have cell phones with them during in-person visits. (Doc. #212-2). Dr. Etherington testified that the policy is based on a concern that cell phones can be used for photography, which is prohibited throughout the NDSH grounds because of patient confidentiality concerns. (Doc. #238, p. 76). The defendants' affidavit evidence also cites

a concern that SOTEP residents might use attorneys' cell phones to call persons whom they are not authorized to contact. (Doc. #261, pp. 5-6).

## 2. Writings Identifying SOTEP Staff

Dr. Etherington acknowledged that SOTEP staff have confiscated plaintiffs' documents in which plaintiffs have identified SOTEP staff by name. (Doc. #238, p. 62). Dr. Etherington described the confiscation as based on security concerns arising from SOTEP residents having tracked information about SOTEP staff and their families, and having made threats to staff. Id. at 88-89. An affidavit of one SOTEP staff member states that "[a]ny time we find staff names on handwritten notes" those notes are confiscated for security review and returned to the resident if they are not deemed inappropriate. (Doc. #218, p. 2).

Dr. Etherington testified that concerns about identification of SOTEP staff extend to residents' legal mail and legal documents. (Doc. #238, p. 115). She testified that staff reviews, or "scans," incoming and outgoing resident mail in the presence of the resident. Id. at 83-84. Documents which include information about SOTEP staff are reviewed for any indication of "stalking-like" behavior; Dr. Etherington testified that, if the documents are not considered indicative of that behavior, the SOTEP residents are allowed to possess those documents. Id. at 89.

The plaintiffs' evidence shows that documents confiscated because they contain information about SOTEP staff have included documents which were prepared for purposes of attorney-client communications, (Doc. #212-4, p .2; Doc. #215-2), though the documents in question were returned to the resident the following day, (Doc. #217, p. 3). An affidavit of the lead plaintiff, Rodney Ireland, describes his initial hand-written

5

complaint in this case having been confiscated by staff, but he does not state that it was done because it identified SOTEP staff members. (Doc. #172-3, p. 3).

3. **Legal Materials Printed from Internet**

At SOTEP, the residents do not have the ability to print documents from the internet. There is no wireless internet access available in the building where SOTEP residents are housed. (Doc. #238, p. 92). Dr. Etherington testified that, in general, SOTEP residents are not allowed to possess internet documents which they receive from someone else, or that those documents need to be preapproved. She described the basis for that restriction as there being "lots of things on the Internet," including some of a sexual nature and some which are nontherapeutic. Id. at 87-88.

As with documents identifying SOTEP staff, the plaintiffs contend that documents confiscated because they emanated from the internet include documents which constitute attorney-client communications. The record evidence includes letters from several attorneys, some of which describe case law which they have sent to their clients, and information about a lawsuit involving Minnesota's sex offender treatment program being confiscated, apparently because the documents had been printed from the internet. (Doc. #215-1, pp. 14, 18). There is, however, no evidence in the record of "internet legal materials" having been confiscated from any of the named plaintiffs.

**Law and Discussion**

The plaintiffs contend that SOTEP policies deprive them of free and adequate access to legal materials, legal mail, and legal counsel, which is essential to their pursuit of this case, as well as to give them meaningful access to the courts in state court proceedings relating to their initial or continued commitments. They assert that a

preliminary injunction is necessary in order to ensure they have the level of access to the courts to which they are constitutionally entitled during the pendency of the case.

In considering a motion for a preliminary injunction, a court is to employ a well-established four-factor inquiry, weighing (1) the threat of irreparable harm to the moving party absent an injunction; (2) the balance of harms; (3) the moving party's likelihood of success on the merits; and (4) the public interest. See, e.g., Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981); North Dakota v. EPA, No. 3:15-cv-59, 2015 WL 5060744, at *3 (D.N.D. Aug. 27, 2015).

1. **Likelihood of Success on the Merits**

In analyzing likelihood of success on the merits, the court must first determine whether to apply the standard of "substantial likelihood of success on the merits" or the standard of "fair chance of prevailing." The "substantial likelihood of success on the merits" standard applies to a challenge to a governmental policy that arises out of a statute or regulation made in a presumptively reasoned democratic process. Planned Parenthood of Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 732 (8th Cir. 2008). Where something other than government action based on presumptively reasoned democratic processes is challenged, the "fair chance of prevailing" standard applies. Id.; Heartland Acad. Cmty. Church v. Waddle, 335 F.3d 684, 690 (8th Cir. 2003). The governmental policies involved in this matter are neither statutes nor a part of North Dakota's administrative code; they are policies developed and applied by the SOTEP staff. This court therefore concludes that the "fair chance of prevailing" standard applies.

In considering whether the plaintiffs have a "fair chance of prevailing," the court must analyze elements of a claim for violation of the right of access to the courts. There is, of course, no question that a person who is civilly committed has a constitutional right of access to the courts. The plaintiffs have not cited, and this court's research has not identified, any cases in which access to courts claims of civilly committed individuals were analyzed any differently than access to courts claims of inmates or pretrial detainees. In addressing claims of denial of access to the courts by civilly committed sex offenders, a Minnesota federal district court stated:

> Under the First Amendment, the freedom to petition includes the right of access to courts. See BE & K Const. Co. v. N.L.R.B., 536 U.S. 516, 525, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002) (citation omitted). This Court notes that "[t]he due process clause of the Fourteenth Amendment makes the First Amendment applicable to the states." Republican Party of Minnesota v. White, 416 F.3d 738, 748 (8th Cir.2005) (citing McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 336 n.1, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995)). In order to state a claim for denial of access to the courts, an inmate must demonstrate that he incurred actual injury; in other words, the inmate must show that the alleged deprivations actually hindered his efforts to pursue a legal claim. Klinger, 107 F.3d at 617 (citing Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). **This showing of prejudice is required of pretrial detainees, as well as prisoners.** See Thomsen, 368 F.Supp.2d at 974 (citing Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir.1993)).
>
> Additionally, in order to survive a motion to dismiss, plaintiffs must allege in their access-to-courts claim that defendants' actions resulted in actual harm or actual injury, such as the loss or rejection of a nonfrivolous legal claim regarding sentencing or the conditions of confinement. See Chambers v. Gilmer, No. 06-2026, Fed.Appx. 469, 2007 WL 1040330 at *1 (8th Cir. April 09, 2007) ("Specifically with regard to his access-to-courts claim, defendants' alleged actions did not prevent Chambers from asserting his rights in a lawsuit against the police officers who allegedly mistreated him, and Chambers did not allege the requisite actual injury from defendants' actions to state such a claim in any event."); Sikora v. Hopkins, No. 98-2033, 163 F.3d 603, 1998 WL 738327 at *1 (8th Cir. Oct.23, 1998) (We agree that Sikora failed to state an access-to-courts claim because he failed to allege actual harm, . . .") (citations omitted). Given that plaintiffs failed to allege in their

> Complaint any actual harm that resulted from defendants' alleged actions (e.g., impinging on their ability to bring a particular non-frivolous claim), plaintiffs have failed to state an access-to-courts claim. Defendants' motion to dismiss should be granted as to their access-to-courts claims and the claims be dismissed without prejudice.

Beaulieu v. Ludeman, No. 07-CV-1535, 2008 WL 2498241, at *18 (D. Minn. June 18, 2008) (emphasis added and footnote omitted). This court therefore employs the same analysis that would apply to a claim of denial of access to the courts by prison inmates.

The plaintiffs argue that the SOTEP cell phone policy makes it impossible for them to have conference calls involving both counsel and expert evaluators. (Doc. #279, p. 2 n.2). Availability of cell phones for that purpose might in fact allow for better use of counsel's time. One of the attorneys whose letters are in the record stated that she commonly uses a cell phone for purposes of dictation while meeting with clients. (Doc. #212-1). The prohibition on cell phones may make that more difficult. SOTEP policies, however, do allow use of other dictation devices. (Doc. #238, pp. 49-50).

The defendants contend that there are legitimate security, safety, and therapeutic reasons for the policies at issue; defendants' interests might, in fact, justify some limitation on the plaintiffs' access to the courts. See Turner v. Saffey, 482 U.S. 78, 89 (1987) (legitimate penological interests may justify policies that hinder inmate's constitutional rights); Banks v. Ludeman, No. 08-5792, 2010 WL 1507601, at *2 (D. Minn. Mar. 9, 2010) (administration of facility housing civilly committed sex offenders raises same concerns as administration of prison facility). The plaintiffs cite no cases in which policies similar to the SOTEP policies at issue were found to have resulted in a violation of the constitutional right of access to the courts.

Communications between SOTEP residents and their attorneys would likely be more efficient if the attorneys were allowed to use cell phones during their meetings, but inefficiency and inconvenience do not rise to constitutional violations. Given the ubiquitous nature of internet use, one might question a blanket policy prohibiting possession of documents simply because they were printed from the internet. The defendants have, in fact, stated that SOTEP will now consider whether the internet document policy should be changed. (Doc. #278, pp. 2-3). Legitimate security concerns might justify confiscation of select documents that included SOTEP staff information, but the evidence shows that not all such documents are permanently confiscated.

Most important to the court's analysis of the "fair chance of prevailing" factor is the lack of evidence of actual harm. It is not enough to show that the policies impose an unreasonable burden on attorney-client communications. The plaintiffs have not submitted evidence of any actual injury resulting from the SOTEP cell phone policy, the policy regarding documents identifying SOTEP staff, or the SOTEP policy regarding internet documents. The plaintiffs' evidence shows that attorney-client communications are less efficient because of the SOTEP policies, but that is not sufficient to succeed on their access to the courts claim. Because there is no evidence of actual harm, the plaintiffs do not have a fair chance of prevailing on their access to the courts claim.

2. **Irreparable Harm**

"To succeed on a motion for a preliminary injunction, the moving party must show that irreparable harm will result absent the injunction. 'In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.'" North Dakota v.

EPA, 2015 WL 5060744, at *7 (quoting Iowa Utilities Bd. v. F.C.C., 109 F. 3d 418, 425 (8th Cir. 1996)).

The plaintiffs assert that any interference with exercise of constitutional rights constitutes irreparable injury, and that a plaintiff who establishes sufficient likelihood of success on the merits of a First Amendment claim also establishes irreparable harm. See Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action, 558 F. 2d 861, 867 (8th Cir. 1977); Emineth v. Jaeger, 901 F. Supp.2d 1138, 1142 (D.N.D. 2012). The plaintiffs have not shown a fair chance of prevailing, and they have not demonstrated that they will suffer irreparable harm if an injunction is not granted.

3. **Balance of Harms and Interests of the Public**

The court must balance the irreparable harm to the moving party if an injunction is not granted against the harm that a preliminary injunction would cause to other parties. The plaintiffs contend that granting the injunction would not harm the defendants, since it would merely require that they follow the law. Defendants argue harm would result to the defendants, and to the public, because the SOTEP program would be less secure.

For the court to grant an injunction, the moving party must establish that the entry of the relief would serve the public interest. The plaintiffs contend, rightly, that it is always in the public interest to protect individuals' constitutional rights. The defendants assert that the public interest is served by its policies promoting safety and security.

## Conclusion

Considering the four factors of Dataphase, it is this court's opinion that the likelihood of success, irreparable harm, balance of harms, and interests of the public

factors weigh against the plaintiffs. The court therefore **RECOMMENDS** that the plaintiffs' motion for a preliminary injunction, (Doc. #170), be **DENIED**.

Dated this 8th day of December, 2015.

                                              /s/ *Alice R. Senechal*
                                              Alice R. Senechal
                                              United States Magistrate Judge

**NOTICE OF RIGHT TO OBJECT**

Pursuant to Federal Rule of Civil Procedure Rule 72(a) and (b) and District of North Dakota Civil Local Rule 72.1(D)(2) and (3), any party may object to this Report and Recommendation by filing with the Clerk of Court no later than **December 22, 2015**, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.