# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Rodney J. Ireland, Lester McGillis, Gerald DeCoteau, William Carter, Ryan Corman, Matthew Graham, Terry Greak, Glenn Halton, Robert Hoff, Monte Hojian, Jeremy Johnson, Michael Kruk, Garrett Loy, Kevette Moore, Cruz Muscha, Darin Napier, Paul Oie, Timothy Olpin, Larry Rubey, Christopher Simon, Kelly Tanner, John Westlie, Robert Lilley, Darl Hehn, Oliver Wardlow, Joshua Keeping, Matthew Dyer, Travis Wedmore, Kyle Aune, Marcus Bartole, Jason Gores, Estel Naser, Andrew Olafson, Stanton Quilt, Raymond Voisine, Eugene Wegley, David Anderson, Eugene Fluge, Robert Beauchamp, Sandy Mangelsen, and Eugene Hinson, <br><br> Plaintiffs, <br><br> vs. <br><br> Maggie D. Anderson, Executive Director, North Dakota Department of Human Services, in her official capacity, Leann Bertsch, Director, North Dakota Department of Corrections and Rehabilitation, in her official capacity, State of North Dakota, North Dakota Department of Human Services, North Dakota Department of Corrections and Rehabilitation, North Dakota State Hospital, and Dr. Rosalie Etherington, Superintendent of the North Dakota State Hospital, in her official capacity, <br><br> Defendants. | Case No. 3:13-cv-3 <br><br> **SUPPLEMENTAL REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT** |

On September 22, 2016, this court recommended denial of the plaintiffs' cross-motion for partial summary to the extent they requested a declaration that North Dakota Century Code chapter 25-03.3, on its face, violates substantive due process rights, insofar as it allows commitment as a sexually dangerous individual (SDI) <u>both</u>

without a prior criminal conviction and without requiring proof of sexually predatory conduct beyond a reasonable doubt (hereafter "standard of proof claim"). That recommendation was based on a conclusion that no named plaintiff had the requisite standing to pursue the claim.

Because the Report and Recommendation (September 22nd R&R) raised the standing issue sua sponte, the plaintiffs asked that supplemental briefing be allowed on that issue. The court granted that request, and issues this Supplemental Report and Recommendation after consideration of the supplemental briefs. (See Doc. #427; Doc. #430; Doc. #440; Doc. #446).

In relevant part, the September 22nd R&R stated:

> The plaintiffs, however, cross-move for a declaration that chapter 25-03.3, on its face, violates substantive due process rights, insofar as it allows an SDI commitment both without a prior criminal conviction and without requiring proof of sexually predatory conduct beyond a reasonable doubt. But, the Sixth Amended Complaint does not allege that any named plaintiff was civilly committed in the absence of either a prior criminal conviction or a prior juvenile adjudication. The court notes that cases from other states addressing similar issues primarily concern persons found incompetent to stand trial or not guilty because of insanity, and the Sixth Amended Complaint does not allege any named plaintiff was subject to a similar finding. Both an adult criminal conviction and a juvenile adjudication require proof beyond a reasonable doubt. Thus, there is no allegation that any named plaintiff was civilly committed in the absence of proof of sexually predatory conduct beyond a reasonable doubt.
>
> Though not raised by the defendants in these motions, it appears to the court that standing is lacking as to these claims. "[A] plaintiff must demonstrate standing for each claim he seeks to press." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 335 (2006). The recent Report and Recommendation concerning class certification described standing requirements:
>
>> In . . . any . . . federal case, plaintiffs must establish standing to sue. The purpose of the standing requirement is to ensure that a plaintiff has "such a personal stake in the outcome of the

> controversy as to assure that concrete adverseness which sharpens the presentation of issues." Baker v. Carr, 369 U.S. 186, 204 (1962). Federal courts use a well-known three-part test to determine whether a plaintiff has standing to sue. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered "injury in fact." Second, the injury must be traceable to the defendant's action which is being challenged. Id. Finally, the injury must be one that would be redressed by a decision favorable to the plaintiff. Id. at 561. The first element—injury in fact—requires a showing that an injury is concrete and particularized and "actual or imminent," not conjectural or hypothetical. Id. at 560.

(Doc. #394, pp. 12-13).

> It appears to this court that none of the named plaintiffs meet any of the three requirements as to the claims concerning absence of a requirement for a criminal conviction or absence of a requirement for a finding of past sexually predatory conduct beyond a reasonable doubt. Since each plaintiff has been either criminally convicted or juvenilely adjudicated delinquent of sexually predatory conduct, none has suffered injury because chapter 25-03.3 does not require a prior criminal conviction or previous sexually predatory conduct proved beyond a reasonable doubt. Even if any of them had suffered injury because of those provisions of chapter 25-03.3, that injury would not be fairly traceable to any actions of any of these defendants. Nor would any named plaintiff be able to demonstrate that he would be subject to the same standards again in the future. It is well recognized that a plaintiff who has suffered an actual injury but is unlikely to suffer further injury in the future may have standing to bring a claim for damages but not to seek equitable relief. City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (quoting O'Shea v. Littleton, 414 U.S. 488, 496 (1974)); Elizabeth M. v. Montenez, 458 F.3d 779, 784 (8th Cir. 2006).
>
> Because no named plaintiff has the requisite standing, this court recommends that the plaintiffs' cross-motion for summary judgment on these claims be denied.

(Doc. # 403, pp. 38-40).

In their supplemental briefing, the plaintiffs identify four plaintiffs whom they contend have been neither criminally convicted nor juvenilely adjudicated delinquent of sexually predatory conduct. The four—Jason Gores, Kyle Aune, Matthew Graham, and

3

Andrew Olafson—are described as having been adjudicated beyond a reasonable doubt only of juvenile charges of indecent exposure. The plaintiffs argue that indecent exposure is not "sexually predatory conduct," and that therefore none of the four has been found beyond a reasonable doubt to have engaged in sexually predatory conduct. Thus, the plaintiffs contend that each of the four has the requisite standing to pursue their standard of proof claim.

In response, the defendants argue that a state court found each of the three had in fact engaged in criminal acts which constituted sexually predatory conduct, and that res judicata and the Rooker-Feldman[1] doctrine prohibit this court from considering that question.

**Law and Discussion**

The September 22nd R&R's recommendation as to standing was based on the premise that each plaintiff had been either criminally convicted or juvenilely adjudicated delinquent, by proof beyond a reasonable doubt, of sexually predatory conduct. The plaintiffs now contend that premise was in error as to Gores, Aune, Graham, and Olafson. The plaintiffs assert that each of the four has been adjudicated delinquent only of indecent exposure—which plaintiffs argue is not sexually predatory conduct—and that therefore none of the four has been found beyond a reasonable doubt to have engaged in sexually predatory conduct.

---

[1] The Rooker-Feldman doctrine derives from two United State Supreme Court cases in which the Court held that federal district courts lack subject matter jurisdiction to review state court judgments, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

The defendants contend that, because the Sixth Amended Complaint does not allege that any plaintiff was committed without either a prior criminal conviction or a prior juvenile adjudication of sexually predatory conduct, the court should not consider the evidence which the plaintiffs have now offered in support of their standing argument. But, "standing is to be assessed under the facts existing when the complaint is filed, not what is pled in the original complaint, frozen for all time." Royal Am. Mgmt., Inc. v. WCA Waste Corp., 154 F. Supp. 3d 1278, 1284 (N.D. Fla. 2016) (internal quotation marks and citation omitted); see also Maytag Corp. v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am., No. 4:08-cv-291, 2009 WL 350649, at *4 (S.D. Iowa Feb. 11, 2009) (Although the plaintiff "did not plead sufficient facts" regarding the first element of standing in the complaint, the court considered facts presented with a motion and found that the plaintiff had suffered an injury in fact). The defendants assert that the evidence which the plaintiffs filed in conjunction with their supplemental briefing should instead have been submitted with the plaintiffs' initial cross-motion for summary judgment. Despite that objection, the defendants also filed evidence in conjunction with their supplemental briefing. This court has considered the evidence which both sides filed along with their supplemental briefing and recommends that the district judge also do so.

One of chapter 25-03.3's requirements for SDI commitment is proof, by clear and convincing evidence, that the individual engaged "in sexually predatory conduct," which is defined as:

> (a) Engaging or attempting to engage in a sexual act or sexual contact with another individual, or causing or attempting to cause another individual to engage in a sexual act or sexual contact, if:

> (1) The victim is compelled to submit by force or by threat . . . ;
>
> (2) The victim's power to appraise or control the victim's conduct has been substantially impaired . . . ;
>
> (3) The actor knows or should have known that the victim is unaware that a sexual act is being committed upon the victim;
>
> (4) The victim is less than fifteen years old;
>
> (5) The actor knows or should have known that the victim has a disability that substantially impairs the victim's understanding of the nature of the sexual act or contact;
>
> (6) The victim is in official custody . . . and is under the supervisory authority, disciplinary control, or care of the actor;
>
> (7) The victim is a minor and the actor is an adult; or
>
> (8) The other individual is a person related to the actor within a degree of consanguinity within which marriages are declared incestuous and void . . . ; or
>
> (b) Engaging in or attempting to engage in sexual contact with another individual or causing or attempting to cause another individual to have sexual contact, if:
>
> > (1) The actor knows or should have known that the contact is offensive to the victim; or
> >
> > (2) The victim is a minor, fifteen years of age or older, and the actor is the minor's parent, guardian, or is otherwise responsible for general supervision of the victim's welfare.

N.D. Cent. Code § 25-03.3-01(9). The statute defines "sexual act" to include various forms of "sexual contact," and defines "sexual contact" to include "any touching of the sexual or other intimate parts of an individual for the purpose of arousing or satisfying sexual or aggressive desires." Id. § 25-03.3-01(6)-(7).

In asserting that indecent exposure is not considered sexually predatory conduct, the plaintiffs rely on In re Maedche, 788 N.W.2d 331 (N.D. 2010). Maedche involved a

6

challenge to North Dakota Century Code chapter 25-03.3 on grounds that it was void for vagueness and that use of treatment-related disclosures of sexual conduct in an SDI commitment proceeding violated due process rights and rights against self-incrimination. Maedche had been convicted of indecent exposure after exposing himself and masturbating in front of a nine-year-old child. 768 N.W.2d at 332. He pled guilty to that charge, and underwent a sex offender risk assessment and psychological evaluation as part of a pre-sentence investigation. Id. at 332-333. During his evaluation, Maedche admitted to "one past sexually-related incident with young girls when he was approximately twelve years old." Id. at 333. Maedche was sentenced to probation, and while on probation, he attended sex offender therapy; during that therapy Maedche admitted to previously unknown sexual contact with minors when he was an adult. Id. The admissions he had made in therapy were used against him in an SDI commitment hearing. Id.

On appeal, Maedche argued that the indecent exposure for which he had been convicted was not a "sexual act" or "sexual contact" for purposes of section 25-03.3-01's definition of sexually predatory conduct. Id. at 336. In analyzing that argument, the North Dakota Supreme Court stated:

> Maedche also contends his indecent exposure conviction is neither a "sexual act" nor "sexual contact" as defined in N.D.C.C. §§ 25-03.3-01(6) and (7), which illustrates the vagueness of ch. 25-03.3. The State agrees indecent exposure is neither a "sexual act" nor "sexual contact," as defined by N.D.C.C. § 25-03.3-01, but contends nothing in chapter 25-03.3 requires that the 'index offense' be the source of a civil commitment petition. . . . While Maedche's indecent exposure offense may not be a sexual act or sexual contact, he admitted to molesting young girls as an adult. Though the incidents were not charged or prosecuted, they were sexually predatory conduct that was permissible for the district court to consider.

Id. The court went on to conclude that chapter 25-03.3 is not unconstitutionally void for vagueness, and that Maedche's due process rights and right against self-incrimination were not violated when his admissions during therapy were used in the SDI proceeding. Id. at 336-38.

This court does not read Maedche as broadly as the plaintiffs do. In that case, the state did not argue that Maedche's indecent exposure conviction constituted sexually predatory conduct. But, this court does not read the opinion to mean that an act that forms the basis of a conviction for—or juvenile adjudication of—indecent exposure can never be considered sexually predatory conduct for purposes of chapter 25-03.3. Section 25-03.3-01's definition of "sexually predatory conduct" includes attempts to engage in sexual acts or sexual contact. For example, an act of indecent exposure that includes attempted sexual contact might come within the definition of "sexually predatory conduct."

The court has thoroughly reviewed the exhibits filed by both parties, to identify the specific offenses for which each of the four plaintiffs was adjudicated delinquent. Those exhibits show that Gores' adjudication involved indecent exposure "for the purpose of immediate sexual contact." (Doc. #438-1, p. 2). Graham was adjudicated delinquent based on an act of indecent exposure which included sexual contact with a five-year-old child. (Doc. #438-3, p. 1). It is difficult to discern the specific circumstances of the offense for which Aune was adjudicated delinquent, but it appears to have been indecent exposure involving a ten-year-old victim, with Aune having been age fifteen at the time of the offense. (Doc. #437-4, pp. 4-7). It is also difficult to discern details of the offense for which Olafson was adjudicated delinquent; in ordering his

8

commitment as an SDI, the state court described his delinquent conduct as including theft and "other acts of a more violent and sexual nature." (Doc. #437-3, p. 3).[2] The North Dakota sex offender registration website gives the following information about his offense, "Indecent exposure - Olafson exposed himself to female staff members at a residential treatment facility. He has a history of sexually abusing male and female victims, and all treatment efforts to date have been unsuccessful." (Doc. #444-2).

The defendants point to each of the four plaintiffs having been found—by virtue of their SDI commitments—to have committed sexually predatory conduct. Since, however, chapter 25-03.3 requires proof by clear and convincing evidence, rather than beyond a reasonable doubt, those state court findings do not conclusively establish that each of the four has been found <u>by proof beyond a reasonable doubt</u> to have committed sexually predatory conduct. The defendants also point to experts for Gores and Aune having conceded at commitment hearings that each had engaged in sexually predatory conduct. (<u>See</u> Doc. #438-1, p. 24; Doc. #438-2, p. 27). But, it is not clear whether the experts were referencing conduct that had been adjudicated by proof beyond a reasonable doubt or by clear and convincing evidence.

---

[2] The order for Olafson's SDI commitment states:

> While a juvenile, [Olafson] became the subject of multiple petitions in juvenile court for delinquent conduct. The delinquent conduct included theft of property. However, it also included other acts of a more violent and sexual nature. In the year 2000 for which the court takes judicial notice, numerous adjudications were made against the respondent for offenses that included simple assault and/or disorderly conduct.

(Doc. #431-3, p. 3).

The court cannot determine whether the acts of indecent exposure which led to juvenile adjudications of Gores, Graham, Aune, or Olafson fall within the parameters of section 25-03.3-01's definition of sexually predatory conduct. Thus, the court cannot determine whether any court has found, by proof beyond a reasonable doubt, that any of the four has engaged in sexually predatory conduct. It is therefore not clear whether any of the four has suffered injury because of the standard of proof which the plaintiffs challenge. Consequently, it is not clear that any of the four meet Lujan's first element of standing—injury in fact—as to the standard of proof claims.

But, meeting the injury in fact requirement is not sufficient to establish standing. In addition to meeting the injury in fact element, the four plaintiffs must establish the other two Lujan elements—that their injuries are fairly traceable to the defendants' actions and that their injuries would be redressed by a favorable decision in this litigation. The plaintiffs argue that the North Dakota Department of Human Services (DHS) has injured each of the four plaintiffs by "confining them in highly restricted and punitive conditions." (Doc. #430, p. 3). They further contend that their injuries are "fairly traceable" to actions of DHS and the North Dakota State Hospital (NDSH) because those entities are wholly responsible for the conditions of their confinement and because DHS bills them for their commitment.[3] They argue that they meet the redressibility element of Lujan because they seek equitable relief, including that their debts for costs of commitment be vitiated. Id. at 3-4.

---

[3] Of the four plaintiffs discussed in this opinion, only one—Gores—is currently confined at NDSH. Olafson is currently serving a sentence in DOCR custody, and expects to be returned to NDSH when that sentence is completed. Both Aune and Graham have been released from the sex offender treatment program. (Doc. #430-1).

In support of their position, the plaintiffs cite case law from another circuit for the proposition that an injury is "fairly traceable" to a defendant's conduct if that conduct contributed to the injury, even though not the sole cause of the injury.[4] That case concerned allegations that "produced water" discharged into Galveston Bay by oil and gas production companies adversely affected the water quality and wildlife in the bay. The opinion's language upon which the plaintiffs rely is from application of a standard specific to citizen suits under environmental regulations, a case far different from this one.

The alleged injury on plaintiffs' standard of proof claim is, in essence, that the four plaintiffs were committed based on a constitutionally inadequate standard of proof; it is not a challenge to conditions of confinement, but to confinement itself. If so defined, and assuming that none of the four plaintiffs has been adjudicated of sexually predatory conduct beyond a reasonable doubt, they would meet Lujan's injury in fact requirement.[5] But, that injury would not be fairly traceable to actions to any of the defendants in this litigation. None of the defendants in this litigation were involved in the state court commitment proceedings; any injury any of the four might have suffered because of the standard of proof of their sexually predatory conduct cannot be traced to

---

[4] Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., 73 F.3d 546, 558 (5th Cir. 1996).

[5] The plaintiffs' claims for continuing injury because of financial responsibility for costs of their confinement would meet the future injury requirement which City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983), imposes in cases seeking solely equitable relief.

any of these defendants.[6] Therefore, none of the four plaintiffs has standing as to the standard of proof claim.

## Conclusion

Having considered the parties' additional briefing, this court reaches the same conclusion made in the September 22nd R&R: the plaintiffs' cross-motion for partial summary judgment should be denied insofar as it concerns a claim that chapter 25-03.3 is facially unconstitutional because it allows SDI commitment <u>both</u> without a prior criminal conviction and without requiring proof beyond a reasonable doubt of sexually predatory conduct.

The parties' objections to the September 22nd R&R address the standing issue discussed in this opinion. **Therefore, any objections they might make to this Supplemental Report and Recommendation must be limited to arguments not raised in their previous filings.** The parties shall have until **December 1, 2016**, to file objections to the Supplemental Report and Recommendation.

Dated this 21st day of November, 2016.

>  /s/   *Alice R. Senechal*
> Alice R. Senechal
> United States Magistrate Judge

---

[6] If, in fact, the four plaintiffs were found to have met the first two requirements of <u>Lujan</u>, the court could conclude that they have met the redressibility requirement. That is, the court could order an equitable remedy of cancellation of their debts for the cost of their commitment, if the commitment were found to have been based on a constitutionally inadequate standard of proof.