## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Rodney J. Ireland, Lester McGillis, Gerald DeCoteau, William Carter, Ryan Corman, Matthew Graham, Terry Greak, Glenn Halton, Robert Hoff, Monte Hojian, Jeremy Johnson, Michael Kruk, Garrett Loy, Kevette Moore, Cruz Muscha, Darin Napier, Paul Oie, Timothy Olpin, Larry Rubey, Christopher Simon, Kelly Tanner, John Westlie, Robert Lilley, Darl Hehn, Oliver Wardlow, Joshua Keeping, Matthew Dyer, Travis Wedmore, Kyle Aune, Marcus Bartole, Jason Gores, Estel Naser, Andrew Olafson, Stanton Quilt, Raymond Voisine, Eugene Wegley, David Anderson, Eugene Fluge, Robert Beauchamp, Sandy Mangelsen, and Eugene Hinson, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 3:13-cv-3 ) ) **REPORT AND RECOMMENDATION** ) **ON MOTION TO SET ASIDE** ) **DISMISSAL AND ON** ) **RECONSIDERATION OF MOTION** ) **TO ADD A PARTY** ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| State of North Dakota, North Dakota Department of Human Services, North Dakota State Hospital, Dr. Rosalie Etherington, Superintendent of the North Dakota State Hospital, and Christopher Jones, Executive Director of the North Dakota Department of Human Services, | ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

In this class action, the plaintiffs challenge certain aspects of North Dakota's system for civil commitment of persons who have been found to be sexually dangerous individuals (SDIs). Defendants are the North Dakota Department of Human Services (DHS), the North Dakota State Hospital (NDSH), the heads of both entities, and the State of North Dakota.

The North Dakota Department of Corrections and Rehabilitation (DOCR) and the

director of that agency were dismissed from the litigation on May 23, 2017, based on a

stipulation of the parties. (Doc. #543). The plaintiffs now move to set aside that

dismissal because of newly discovered facts. (Doc. #549). If the dismissal is set aside,

the plaintiffs seek reconsideration of an order which denied their motion to add Jeffrey

Wright as a plaintiff. Though not explicitly stated, if Wright were added as a party, it

appears the plaintiffs would then seek reconsideration of an order which denied

certification of a proposed DOCR Class.

### Summary of Recommendation

Federal Rule of Civil Procedure 54(b) allows a court to revise its orders prior to

entry of final judgment. Final judgment dismissing DOCR and its director has not been

entered, and evidence newly discovered by the plaintiffs' counsel establishes sufficient

reason to set aside that order of dismissal. This court recommends that, if that order is

set aside, the motion to add Wright as a plaintiff be reconsidered and granted.

### Background

The procedural history leading to these motions is extensive, and a review of that

history is therefore in order.

The Sixth Amended Complaint includes claims that policies and practices of

DOCR deprive certain DOCR inmates of procedural and substantive due process rights.

Those claims center on DOCR actions prior to referral of inmates for evaluation for civil

commitment as SDIs. An earlier order discussed the factual basis of the claims against

DOCR and its director (hereinafter collectively, DOCR claims):

> The procedural due process claim alleged by the plaintiffs concerns
> DOCR's pre-petition process. North Dakota law requires that approximately
> six months before the projected release date of an inmate, the department is

2

to complete an assessment of the inmate to determine whether a recommendation is to be made to a state's attorney for civil commitment. If, after completion of the assessment, the department determines the inmate may meet the definition of a[n] SDI, the department is to refer the inmate to the state's attorney of a county. Following receipt of the referral, but at least 60 days before the inmate's release date, the state's attorney is to notify the DOCR and the attorney general whether the state's attorney intends to file a civil commitment petition. If the DOCR authorizes a petition, the district court determines whether the individual must be detained pending a commitment hearing.

The plaintiffs maintain that this process unconstitutionally deprives them of liberty without notice because the DOCR does not inform an inmate of possible detention for commitment proceedings until immediately before the scheduled release date from DOCR custody. The lack of notice, according to plaintiffs, results in few contested probable cause hearings. Tied into this claim is plaintiffs' claim that the defendants have violated substantive due process rights because DOCR's referral process lacks a rational basis for utilizing "discredited actuarial instruments" in the selection of inmates to be referred for SDI proceedings.

(Doc. #244, p. 5).

The plaintiffs sought certification of four classes, but their proposed DOCR Class was not certified. Plaintiffs' proposed DOCR Class would have included all sex offenders[1] committed to the custody of DOCR "who have been or will be referred to a state's attorney for civil commitment" under North Dakota Century Code section 25-03.3-03.1. (Doc. #343, p. 2) (emphasis added). Two named plaintiffs had been proposed as DOCR Class representatives—one remained subject to a civil commitment order while in DOCR custody; the other was serving a sentence for a non-sexual offense, and a court had recently found he no longer met criteria for SDI commitment. (Doc. #394, pp. 18-21). On August 29, 2016, this court filed a Report and Recommendation (R&R) on the

---

[1] The plaintiffs' proposal defined "sex offenders" per DOCR Policy No. 1A-16 (2012). (Doc. #343, p. 2 n.5).

plaintiffs' motion for class certification. Though recommending that the other three

proposed classes be certified, this court recommended against certification of the

proposed DOCR Class because no named plaintiff satisfied the requirements for

standing to raise the DOCR claims.

While the R&R was awaiting the district judge's decision, the plaintiffs moved to

add Jeffrey Wright as a plaintiff, asserting that he had standing to raise the DOCR

claims. At that time, Wright was in DOCR custody and had a projected release date in

May 2017.

An order denying the motion to add Wright summarized the plaintiffs'

contentions as to Wright's standing:

> The plaintiffs allege that [Wright] is currently situated such that his
> referral for SDI commitment is not conjectural or hypothetical, and that he
> therefore has standing to raise claims as to DOCR. Wright is currently serving
> a sentence for failure to register as a sex offender at the James River
> Correctional Center (JRCC). In his declaration, Wright states that he is
> scheduled to be released in 2017, but that he fears he will be referred for
> commitment as an SDI as his release date nears. Wright describes having
> been subject to an SDI commitment petition previously. Wright states that,
> because of that earlier petition, he was held at NDSH on evaluation status for
> nine months, but that at his commitment hearing the judge ultimately
> decided he did not meet criteria for SDI commitment.

(Doc. #450, p. 3) (citations omitted). The order also summarized the defendants'

counter arguments:

> [T]he defendants allege that the plaintiffs have not shown that Wright
> would have standing to pursue pre-referral claims against DOCR, because
> they have not shown that his referral for SDI commitment is more than
> conjectural or hypothetical. In fact, the defendants describe Wright's
> potential for referral for possible SDI commitment as "no greater than
> anyone else's possibility, and []arguably less due to the prior judicial
> determination with no alleged subsequent conviction or sexually predatory
> conduct."

Id. at 9 (emphasis added).

In denying the motion to add Wright as a plaintiff, this court explained:

The plaintiffs have not shown that Wright's risk of repeated referral for SDI commitment proceedings is not conjectural or hypothetical, as required by Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). The plaintiffs contend that review of Wright's case for referral is "possible" under DOCR's Sex Offender Pre-release Staffing policy, (Doc. #344-38), but do not assert that it is mandatory under that policy. This court's review of that policy does not lead to the conclusion that his circumstances would mandate referral. The defendants assert that Wright's likelihood of referral for a second SDI proceeding is "arguably less" than that of other sex offenders in DOCR custody. In light of the defendants' assertions, the court concludes that Wright's risk of future harm is no greater than that of the plaintiffs originally proposed as representatives of a DOCR class. If, in fact, Wright does not have standing, it would be futile to allow him to be added as a plaintiff.

Considering futility, failure to address the standing issue in earlier amendments, the likely delay, and prejudice to the defendants, the court concludes that the plaintiffs have not established good cause to add Wright as a plaintiff and their motion is therefore **DENIED**.

Id. at 9-10 (emphasis added). On December 5, 2016, the plaintiffs appealed that order to the district judge. (Doc. #457).

On December 16, 2016—while the plaintiffs' appeal to the district judge was pending—DOCR referred Wright to the Cass County State's Attorney for commitment proceedings. The referral letter stated, "Based on our assessment, the above individual 'may meet the definition of a sexually dangerous individual,' see N.D.C.C. §§ 25-03.3-03.1(8), 25-03.3-03.1(2), and therefore this recommendation is made for case review to determine if civil commitment proceedings are necessary." (Doc. #559-1, p. 1).

While the motion to add Wright as a party was on appeal, neither the plaintiffs, the court, or Wright himself was aware that DOCR had referred him for commitment proceedings. On March 21, 2017, the district judge affirmed the denial of the motion to add Wright as a plaintiff, stating:

The record supports the magistrate judge's finding that the plaintiffs have

failed to demonstrate good cause for adding Jeffrey Wright as a plaintiff. In
addition, the undersigned shares the magistrate judge's concerns regarding
the futility of adding Wright as a plaintiff.

(Doc. #516, p. 2).[2] After the district judge affirmed denial of the motion to add Wright as

a party, the plaintiffs stipulated to dismissal of all DOCR claims, citing the absence of a

plaintiff with standing to pursue those claims. In the stipulation, the parties agreed that

the plaintiffs "reserve their right to appeal the Court's orders denying certification of a

DOCR Class and denying plaintiffs' motion to add Jeffrey Wright as an additional

plaintiff to represent the DOCR Class, upon entry of final judgment." (Doc. #538, p. 3).

On May 23, 2017, the district judge entered an order dismissing the DOCR claims

based on the parties' stipulation. On that same date—May 23, 2017—Wright sent a letter

to the plaintiffs' counsel. Wright's letter told the plaintiffs' counsel that on May 16, 2017,

he had learned that he had been referred for evaluation for civil commitment as an SDI,

that he had been transferred to Cass County Jail that same day, that a May 17, 2017

preliminary hearing resulted in an order that he be transferred to NDSH for an SDI

evaluation, and that he was transferred to NDSH for evaluation on May 18, 2017. For

purposes of this opinion, the court assumes that Wright is still on evaluation status at

NDSH, since counsel have not advised otherwise. (See Doc. #549-1, p. 2).

## Law and Discussion

### 1.    Motion to Set Aside Dismissal of DOCR

The plaintiffs move for relief from the order dismissing the DOCR claims under

Federal Rule of Civil Procedure 60(b). Rule 60(b) allows a district court to relieve a

---

[2] On March 21, 2017, the district judge also adopted the R&R on the motion for
class certification, certifying three classes but denying certification of a DOCR class.
(Doc. #518).

party from a "final judgment, order, or proceeding" for various reasons, including

"newly discovered evidence that, with reasonable diligence, could not have been

discovered in time to move for a new trial under Rule 59(b)." The plaintiffs cite DOCR's

December 2016 referral of Wright for SDI evaluation—a fact not disclosed to plaintiffs

or to the court while the appeal was pending—as newly discovered evidence. But, final

judgment has not been entered on the DOCR claims, so the express language of Rule

60(b) does not apply.

Though the parties do not cite Rule 54(b), that rule appears to better address the

current situation than does Rule 60(b). Rule 54(b) provides:

> [A]ny order or other decision, however designated, that adjudicates fewer
> than all the claims or the rights and liabilities of fewer than all the parties
> does not end the action as to any of the claims or parties and may be revised
> at any time before the entry of a judgment adjudicating all the claims and all
> the parties' rights and liabilities.

The order dismissing the DOCR claims adjudicated "fewer than all the claims" of "fewer

than all the parties." Thus, the order dismissing the DOCR claims is subject to revision

under Rule 54(b) since final judgment has not been entered.

DOCR's responsive brief makes no effort to explain why it failed to advise the

court of its December 16, 2016 letter during the time the Rule 72(a) appeal was pending.

DOCR asserts that since the referral occurred several weeks after the motion to add

Wright had been denied, it "could not have affected that Order in any way." (Doc. #559,

p. 4). But, it was a new fact material to the appeal, and DOCR's brief on the appeal gave

no hint of a new material fact. To the contrary, DOCR's brief on the appeal—filed after

DOCR had referred Wright to the state's attorney—told the court that the likelihood of

Wright's referral remained nebulous and speculative:

> [I]t is futile to add the proposed class plaintiff. While it may be factual that the proposed plaintiff's fears with regard to the process are real, fear of something happening is neither proof nor fact that it will actually happen. It is merely a nebulous and speculative statement based on emotion. <u>It is especially unreliable in light of the fact that the plaintiff in question has been assessed and released without referral [sic],[3] and that the plaintiff in question has only his feelings and opinions that the prosecutor is "vengeful" to support his claim that he will be subject to referral again.</u>

(Doc. #469, p. 4) (emphasis and footnote added).

Giving all benefit of the doubt to DOCR's counsel, the court assumes she did not confer with her client prior to filing her brief and that counsel was not aware of the December 16, 2016 letter at the time she filed her brief. Plaintiffs do not suggest, and the court will not assume, that counsel intentionally misled the court. But, counsel had a duty to confer with her client prior to filing that brief so that she would not mislead the court in representing that the likelihood of Wright's referral remained speculative. Had she conferred with her client, the court is confident that she would have disclosed the December 16, 2016 referral to plaintiffs and to the court. Disclosure of that evidence <u>might</u> have impacted the decision on appeal, and Wright <u>might</u> have been added as a plaintiff at that time.

DOCR argues that language of the parties' stipulation prohibits reconsideration of the dismissal at this time. DOCR contends, "Although appealing the denial of adding Jeffrey Wright . . . was clearly contemplated and expressly reserved, it was stipulated that plaintiffs would not be able to exercise that reserved right until entry of final judgment." (Doc. #559, p. 3). But, the plaintiffs should not be expected to have

---

[3] Wright had previously been assessed <u>and referred</u> for civil commitment proceedings, but he was released after the state court found that he did not meet the criteria for commitment as an SDI. (Doc. #417-2, pp. 2-3).

contemplated DOCR's failure to disclose Wright's referral. The language of the stipulation should not be considered to foreclose reconsideration.

In this court's opinion, the plaintiffs have demonstrated sufficient reason under Rule 54(b) to set aside the order dismissing the DOCR claims and to reconsider the motion to add Wright as a plaintiff.

## 2.    Reconsideration of Motion to Add Wright

In the event the district judge determines DOCR's dismissal should be set aside, it will then be necessary to reconsider the motion to add Wright. For the sake of judicial economy, that question is addressed at this time in the form of a recommendation.

The original motion to add Wright as a party was decided under Rule 16(b)(4)'s good cause standard because the motion was made after the established deadline for motions to amend the pleadings. Accordingly, the court considered four factors in determining whether the plaintiffs had shown good cause—delay, prejudice, failure to cure, and futility. (Doc. #450, pp. 7-10). If the motion is reconsidered, each of those four factors must again be analyzed.

Though each of the four factors weighed against a finding of good cause, one factor—futility—weighed more heavily than the other three. As to futility, the earlier order concluded that "Wright's risk of future harm is no greater than that of the plaintiffs originally proposed as representatives of a DOCR class.[4] If, in fact, Wright does not have standing, it would be futile to allow him to be added as a plaintiff." Id. at 9

---

[4] As previously discussed, two named plaintiffs had been proposed as DOCR Class representatives. One remained subject to a civil commitment order while in DOCR custody; the other was serving a sentence for a non-sexual offense, and a court had recently found he no longer met criteria for SDI commitment.

(footnote added).

The court thus considers futility in light of the newly disclosed facts. The

plaintiffs assert Wright should have been found to have standing:

> [When the original motion was filed], Wright was subject to referral based on the letter of N.D.C.C. § 25-03.3-01(8) *and* the terms of DOCR's written policy: Wright had previously engaged in sexually predatory conduct *and* he was still subject to sex offender registration laws. Either ground subjected Wright to referral by DOCR pursuant to state statute and DOCR policy. That Wright was, in fact referred by DOCR pursuant to that policy shows that his likelihood of harm was far from conjectural or speculative. DOCR's referral policy placed Wright at imminent risk for referral; that risk of harm was real and exposed him to imminent, concrete injury, as newly discovered evidence demonstrates.

(Doc. #563, p. 3) (citation omitted).

As discussed above, the plaintiffs' proposed DOCR Class included those persons

in DOCR custody "who <u>have been or will be referred</u> to a state's attorney for civil

commitment" as SDIs. (Doc. #343, p. 2). In denying the motion, this court concluded

there was insufficient showing that the risk of Wright's referral was not speculative or

conjectural. But, while an appeal of that denial was pending, <u>he was referred</u> for civil

commitment.

Because he did not know of his December 2016 referral, the plaintiffs describe

Wright as a "victim of the very DOCR policy the DOCR Class seek[s] to challenge." (Doc.

#563, pp. 3-4). They assert DOCR's lack of disclosure of referrals makes it "procedurally

impossible, as a practical matter, to challenge DOCR's referral policies because inmates

[are] unaware of their referral until after they [are] in the midst of civil commitment

proceedings." (Doc. #549-2, p. 7). As they note, one of the plaintiffs' early discovery

requests was for documents that might have identified Wright's referral; but, the court

limited production of DOCR's referral letters to those concerning named plaintiffs, so

DOCR was not required to produce the letter referring Wright to the state's attorney. (See Doc. #563, p. 6).[5]

In opposing reconsideration, DOCR contends that the plaintiffs must establish that other DOCR inmates face circumstances similar to Wright and that the plaintiffs have failed to do so. In other words, DOCR contends Wright would constitute a "class of one" and that fact should defeat his standing. Though that question may be relevant to certification of a DOCR Class, it is not determinative of Wright's standing.[6]

In determining whether Wright has standing, the critical question is the point in time from which the analysis is made. There is no dispute that, while the appeal was pending, Wright's status changed—he moved from pre-referral status to referral status. As discussed above, that change in status should have been disclosed to the plaintiffs and to the court. And, after the appeal was decided, Wright was transferred from DOCR custody into DHS custody. The plaintiffs contend Wright's standing should be evaluated during the pendency of the Rule 72(a) appeal. (Doc. #563, p. 3). The court has identified no case law addressing circumstances such as those presented—when facts critical to standing change without that person's knowledge—while a matter is under appeal pursuant to Rule 72(a).

Courts have held that standing is to be determined "at the time the relevant claim

_____

[5] Subsequent court orders have required that the other defendants produce documents concerning persons other than named plaintiffs. (See Doc. #482; Doc. #490; Doc. #548).

[6] The question of his similarity to others who might be referred for an SDI evaluation was considered in denying the original motion to add Wright as a plaintiff. But, that question was considered in the context of the likelihood that Wright would be referred for civil commitment proceedings, not in the context of him having been referred. (See Doc. #450, p. 2).

is raised or party is joined." Saleh v. Fed. Bureau of Prisons, Nos. 05-cv-02467, 06-cv-01747, 07-cv-00021, 2009 WL 3158120, at *5 (D. Colo. Sept. 29, 2009) (citing Cty. of Riverside v. McLaughlin, 500 U.S. 44 (1991)). So, the point of analysis could be considered the filing of the motion to add Wright. The motion to add Wright could be considered analogous to a motion to intervene, and some courts have held that the standing of an intervenor is to be determined as of the time the motion to intervene was filed. Comer v. Cisneros, 37 F.3d 771, 801 (2d Cir. 1994). The parties have identified no Eighth Circuit case law on this point, and the court's research has revealed none.

At this juncture, the court must decide the question of futility—not the question of Wright's standing. Because the point at which his standing is to be evaluated is unclear, this court gives less weight to the futility factor than it did in deciding the original motion.

While facts relevant to the futility factor have changed, the court also considers whether facts surrounding the other good cause factors have changed. At the time the original motion was decided, this court concluded there would be "some additional delay" resulting from necessary written discovery with "some consequent prejudice" to the defendants. As to failure to cure, the earlier decision noted that the plaintiffs had amended the complaint six times, that additional plaintiffs had been joined via some of those amendments, and that the plaintiffs had multiple opportunities to add a plaintiff with standing to assert the DOCR claims. Each of those three factors weighed against a finding of good cause.

As to failure to cure—in light of the newly discovered evidence—the plaintiffs did not act to add a plaintiff in similar circumstances prior to the report and

recommendation which recommended against certification of a DOCR class; however, they acted very promptly after learning of Wright's referral. As to delay and prejudice, there is no question that adding Wright would result in the need for some additional written discovery. This court's original order—optimistically—stated that written discovery was nearing completion; but, discovery has continued during the intervening eight months. In their motion for reconsideration, the plaintiffs have identified specific and limited written discovery they see as necessary if Wright is added as a plaintiff. (See Doc. #563, p. 7). That additional discovery would result in some delay and some consequent prejudice. But, at least some part of that delay and prejudice would have resulted from DOCR's failure to update the court and plaintiffs as to Wright's referral.

In this court's opinion, fairness requires that Wright at least be given an opportunity to fully argue the question of his standing. Given the unusual circumstances presented, it is this court's opinion that the plaintiffs should be found to have met the good cause standard of Rule 16(b)(4) and that they should be allowed to add Wright as a plaintiff. Doing so would not foreclose motions to dismiss based on justiciability or on other grounds, nor would it necessarily lead to certification of the proposed DOCR Class. Those are questions to be determined later.

## Conclusion

Accordingly, it is **RECOMMENDED** that plaintiffs' motion to set aside the order dismissing the DOCR claims, (Doc. #549), be **GRANTED** and that, if that order is set aside, the motion to add Wright as a plaintiff be reconsidered and **GRANTED**.[7]

---

[7] Also pending before the court is plaintiffs' motion for leave to file a motion for reconsideration. (Doc. #553). If the above recommendation is followed, that motion should be found **MOOT**.

Dated this 31st day of July, 2017.

> /s/ Alice R. Senechal
> Alice R. Senechal
> United States Magistrate Judge

### NOTICE OF RIGHT TO OBJECT[8]

Any party may object to this Report and Recommendation by filing with the Clerk of Court no later than **August 14, 2017**, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.

---

[8] See Fed. R. Civ. P. 72(b); D.N.D. Civ. L.R. 72.1.